IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| THE SRKO FAMILY LIMITED | ) | Bankruptcy Case No. 10-13186-SBB |
| PARTNERSHIP | ) | |
| EIN 20-0334422 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

### AMENDED DISCLOSURE STATEMENT TO ACCOMPANY
### PLAN OF REORGANIZATION DATED SEPTEMBER 24, 2010

### INTRODUCTION

This Disclosure Statement ("Disclosure Statement"), as amended, has been prepared by The SRKO Family Limited Partnership ("Company," "SRKO" or "Debtor") to accompany its Plan of Reorganization, as amended, dated September 24, 2010 (the "Plan") which has been filed in the SRKO Chapter 11 case. This Disclosure Statement is being provided to all creditors and interest holders of the Debtor. This Disclosure Statement is subject to final approval pursuant to 11 U.S.C. Section 1125 by the United States Bankruptcy Court for the District of Colorado as containing adequate information to enable creditors and interest holders to determine whether to accept the Debtor's Plan. The Court's approval of this Disclosure Statement does not constitute a decision on the merits of the Plan. Issues related to the merits of the Plan and its confirmation will be the subject of a confirmation hearing which is scheduled for _____, 2010 at ___:00 a.m. at the **United States Bankruptcy Court, Courtroom ___, 721 19th Street, Denver, Colorado 80202.**

THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION. THE COMMISSION HAS SIMILARLY NOT REVIEWED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT.

This Disclosure Statement is provided to you along with a copy of the SRKO Plan and a Ballot to be used for voting on the Plan. Please complete the Ballot according to the instructions

contained on the Ballot if you intend to vote for or against the SRKO Plan. Each creditor or interest holder may vote on the Plan by completing the enclosed Ballot and returning it to counsel for SRKO:

> Lee M. Kutner
> Kutner Miller Brinen, P.C.
> 303 East 17th Avenue
> Suite 500
> Denver, CO 80203

This Ballot must be received by Kutner Miller Brinen, P.C. no later than **5:00 p.m. on** _____, **2010** which date has been set by the Court as the last day to vote on the Plan. Terms contained in this Disclosure Statement, which are defined in the Plan, have the same meaning as set forth in the definitional section of the Plan, Article II.

**Recommendation.** As discussed more fully below, the Debtor firmly believes that the Plan represents the best alternative for providing the maximum value for creditors. The Plan is based on the restructuring of the Debtor's financial obligations and will provide secured and unsecured creditors with payment on account of their claims. **The Debtor strongly believes that confirmation of the Plan is in the best interest of creditors and recommends that all creditors entitled to vote on the Plan vote to accept the Plan.**

**Voting Requirements.** Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are "impaired" under the Plan are entitled to vote to accept or reject the Plan. Classes of Claims and Interests that are not impaired are not entitled to vote and are deemed to have accepted the Plan. Voting on the Plan shall be pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules, and a Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class actually voting. Once the Disclosure Statement is approved by the Court as containing adequate information, it will be sent to all creditors along with the Plan and a Ballot for voting on the Plan. Creditors will be given at least 25 days to vote on the Plan and return their Ballot to counsel for the Debtor.

2

**Voting Classes**. Classes 1, 4, 5, 6 (a and b), 8, 9, 10, 11, and 12 shall be entitled to vote to accept or reject the Plan.

**Deemed Acceptance of Plan**. Unimpaired classes are conclusively presumed to accept the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Classes 2, 3 and 13 are unimpaired under the Plan.

**Deemed Rejection of Plan**. Classes that receive or retain nothing under the Plan are deemed to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Class 7 falls under this category.

**One Vote Per Holder.** If a holder of a Claim holds more than one Claim in any one Class, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting for or against the Plan.

## CHAPTER 11 AND PLAN CONFIRMATION

Chapter 11 of the United States Bankruptcy Code is designed to allow for the rehabilitation and reorganization of financially troubled entities or individuals. Chapter 11 allows the Debtor to retain its assets during administration of its Chapter 11 case as a Debtor-in-Possession and following confirmation of a plan as a reorganized Debtor or as provided in the Plan. Once confirmation of a Plan of Reorganization is approved by the Court, the Plan of Reorganization is the permanent restructuring of the Debtor's financial obligations. The Plan also provides a means through which the Debtor will restructure or repay its obligations.

The Plan of Reorganization divides creditors into classes of similarly situated creditors. All creditors of the same Class are treated in a similar fashion. All shareholder Interests are also classified and treated alike. Each Class of creditors or interest holders is either impaired or unimpaired under the Plan. A Class is unimpaired if the Plan leaves unaltered the legal, equitable and contractual rights to which each creditor in the class is entitled. Alternatively, a claimant is unimpaired if the Plan provides for the cure of a default and reinstatement of the maturity date of the claim as it existed prior to the default.

The Bankruptcy Court set a bar date establishing the last date for filing Proofs of Claim as

3

August 16, 2010. The bar date has passed. The Plan provides that Claims of all Classes shall be allowed only if evidenced by a timely filed Proof of Claim or which otherwise appear in the Schedules filed by SRKO and are not scheduled as disputed, contingent or unliquidated unless subsequently allowed by the Court. Creditors may check as to whether or not their claims have been scheduled as disputed, contingent or unliquidated by reviewing the Schedules and the amendments thereto filed by SRKO in the Bankruptcy Court for the District of Colorado. Alternatively, creditors may contact counsel for SRKO or SRKO directly in order to determine how they have been scheduled.

Chapter 11 does not require that each holder of a Claim against or Interest in SRKO vote in favor of the Plan in order for the Court to confirm the Plan. The Plan, however, must be accepted by at least one impaired Class of Claims by a majority in number and two thirds in amount, without including insider acceptance of those Claims of such Class actually voting on the Plan. Assuming one impaired Class votes to accept the Plan, it may be confirmed over its rejection by other Classes if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each Class of Claims or Interests that is impaired under and has not accepted the Plan.

The Bankruptcy Code requires that if interest holders retain an interest or receive anything under the Plan, then the unsecured creditor Classes must either be paid the full value of their claims or vote to accept the Plan. The Plan provides that the interest holders will retain their interest under the terms of the Plan. Therefore, the Plan can only be confirmed if the unsecured creditor class votes to accept the Plan, unless the unsecured creditor class is paid in full. Since the Debtor believes that the Plan provides the best alternative for creditors, all creditors are urged to vote to accept the Plan.

If all Classes of Claims and Interests vote to accept the Plan, the Court may confirm the Plan. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation. Among other things, Section 1129 requires that the Plan be in the best interest of the holders of Claims and Interests and be feasible through a showing that confirmation will not be followed by the need for further financial reorganization of the Debtor.

Each class of creditors who is impaired will have an opportunity to vote on the Plan. In the event the requisite majority of each class votes to accept the Plan, the Plan will be deemed accepted

4

by the subject class.  If a class of creditors votes to reject the Plan, the Plan may be confirmed over the rejection of the class pursuant to 11 U.S.C. § 1129(b).

## OVERVIEW OF THE PLAN/MEANS OF EXECUTION

The Plan divides creditors and interest holders into 13 Classes.  Each Class is treated as either impaired or unimpaired under the Bankruptcy Code.  Treatment of the Classes is discussed in greater detail below and in the Plan.  Class 1 priority claims shall be paid in full within one year. Class 2 consists of the Allowed Secured Claim held by the El Paso County Treasurer.  Class 2 is unimpaired under the Plan.  Class 3 consists of the Allowed Secured Claim held by the Denver County Treasurer, and is unimpaired under the Plan.  Class 4 consists of the secured claims held by the Mechanics Lien Claimants holding claims which encumber the Project, Filing 1, and are impaired under the Plan.  The real estate known as the Project, Filing 1, shall be sold and Class 4 shall be satisfied from the sale of Filing 1.  Class 5 consists of the Allowed Secured Claims held by mechanics lien claimants holding allowed claims encumbering the Project, 109 Acres, and excluding the Mechanics Lien Claimants, Class 4.  Class 5 shall retain their lien and receive payment from the Debtor from the sale, refinance or development of the Project, 109 Acres.  Class 6(a and b) consists of the allowed Secured Claims held by Ho, LLC, and are impaired under the Plan.  Class 7 consists of the Allowed Secured Claim held by Sunshine Home Development, Inc.  Class 7 is impaired and shall receive nothing under the Plan.  Class 8 consists of the Allowed Secured Claim of Pueblo Bank & Trust Company, and is impaired.  Class 9 consists of the Allowed Secured Claim of N.A. Rieger, and is impaired by the Plan.  Class 10 consists of the Allowed Secured Claim of Pinnacle Business Finance, Inc. and is impaired under the Plan.  Class 11 consists of the Allowed Claims held by unsecured creditors and is impaired under the Plan.  Class 12 consists of the Interests held by pre-confirmation partners, and is unimpaired by the Plan.  Class 13 consists of the Allowed Secured Claim held by the Douglas County Treasurer, and is unimpaired by the Plan.

As a means of executing the Plan, SRKO will sell the Project, Filing 1 within 4-6 months of the Effective Date of the Plan and Class 4 shall be satisfied with the proceeds from the sale. Pursuant to 11 U.S.C. §1111(b)(ii), Class 4 claims shall remain non-recourse to SRKO and shall only be recourse with respect to their existing collateral.  The Debtor shall continue to operate its

business, and market, sell, refinance and/or develop the Project, 109 Acres within five years for the benefit of the creditors holding claims against the real estate, and for the benefit of the Class 11 general unsecured creditors.

## BACKGROUND AND EVENTS LEADING TO CHAPTER 11 FILING

**The Debtor**

The Debtor, a Colorado limited partnership, was formed on October 27, 2003. The following parties hold ownership interests in SRKO:

> (a) Duk, LLC, a Colorado limited liability company, is SRKO's general partner, and holds a one percent (1%) interest in the Debtor. Duk, LLC was formed on October 23, 2007. Jannie Richardson the sole member and manager of Duk, LLC;
>
> (b) The Allen Richardson Dynasty Trust dated October 27, 2003 holds a thirty-three and one-third percent (33.33%) interest in the Debtor;
>
> (c) The Jessica Stinson Dynasty Trust dated October 27, 2003 holds a thirty-three and one-third percent (33.33%) interest in the Debtor; and
>
> (d) The Jeffrey Stinson Dynasty Trust dated October 27, 2003 holds a thirty-three and one-third percent (33.33%) interest in the Debtor.

Jannie Richardson ("Jannie Richardson" or "Ms. Richardson" or "Richardson") currently holds ownership interests in the following entities: DUK, LLC, a Colorado Limited Liability Company, Sunshine Home Development, Inc., a Colorado corporation, Jannie Richardson, LLC, a Colorado limited liability company, Sunshine Home Management, LLC, a Colorado limited liability company, GeoSun, LLC, a Colorado limited liability company, Jannie Richardson, LLC, a Colorado limited liability company, JRKO, LLC, a Colorado limited liability company, and Noah, LLC, a Colorado limited liability company.

Ms. Richardson is originally from South Korea and has been living in Colorado Springs since 1976. She began as a hair dresser and then in 1979, started her own excavation company and secured government contracts on local, state and federal levels, including an EPA contract. Over an eight year period, the company, Century Excavation, performed work for the City of Colorado Springs, Colorado, the City of Salida, Colorado, and the State of Colorado. In 1986, the economy experienced a downturn that greatly impacted the excavation business and therefore the company

6

was forced to close. From 1987 through 1997, Richardson started buying residential properties out of foreclosure in cash, developed and sold them. Over the years, Richardson raised enough cash for the Debtor to continually enter into numerous transactions without having to borrow money.

Jannie Richardson and her family members have operated their business entities as family businesses for approximately fifteen (15) years. Because SRKO is a family business and is not a corporate entity, it has not engaged in a formal board of directors. Until financial problems arose in the Colorado Crossing project (as described in detail below), SRKO had not faced any significant prior legal problems. Overall, approximately twenty-two (22) family members work in the Richardson family businesses and, during the course of the Colorado Crossing litigation, have worked without pay so that the project can be completed.

It has been customary over the years for SRKO to enter into business transactions with affiliated entities. In order to initially raise capital for the Colorado Crossing project, SRKO pledged several properties that were free and clear of liens and encumbrances as collateral to secure funding from various lenders.

Various affiliated or related business entities have assisted SRKO in the development of the Colorado Crossing Project. These companies generally consisted of, Ho, LLC, a Colorado limited liability company, Orchid, LLC, a Colorado limited liability company, Spring Water Lofts, LLC, a Colorado limited liability company, Sunshine Home Management, LLC, and Spring Water Development, LLC, a Colorado limited liability company. These entities assisted in the following activities: (1) raising additional capital to complete the project since there is no construction lender, and (2) compensating "human capital" *i.e.* family members who had been working without pay.

The Debtor's principal business has included commercial real estate development and investments. Since its formation in 2003, the Debtor has been profitable in its business operations. Between 2005 and 2007, the Debtor had earned over $700,000 in profits as listed on its tax returns. The net profits could have been much higher, but during the relevant time period the Debtor was acquiring additional assets and spending its resources on constructing new improvements. By the end of 2007, the Debtor had annual revenue of approximately $2,000,000. The following are some of the successful real estate transactions in which the Debtor has been involved:

a.  Stratmoor Heights Development, Colorado Springs, Colorado – The Stratmoor Heights project is a residential development that offers single family residential homes in south Colorado Springs. This raw land was purchased, developed into pad sites, and sold to home building contractors.

b.  Candlewood Suites, Colorado Springs, Colorado – The Candlewood Suites is a 122 room extended stay hotel located in Colorado Springs. The hotel is under the Intercontinental Hotels flag, which also operates brands such as Holiday Inn. The hotel has annual revenue of approximately $2,000,000, and has been profitable for the last ten years.

c.  Comfort Inn & Suites, Overland Park, Kansas – The Comfort Inn & Suites is an 81 room hotel located in Overland Park, Kansas. This hotel was purchased by the Debtor in 2005, and since then has won multiple awards for renovations. This hotel has annual revenue of approximately $1,500,000.

d.  Pine Creek Village, Colorado Springs, Colorado – The Pine Creek Village is a mixed use shopping center located in Colorado Springs, Colorado. There is approximately 100,000 square feet of Class A office space which was primarily occupied by medical use tenants. This shopping center also incorporates approximately 30,000 square feet of ground level retail space. This center was built between 2004 and 2005 by the Debtor, after acquiring it from a previous developer that went out of business. When the Debtor acquired this property, it only had the steel frames constructed on one of the buildings. The Debtor continued to complete the construction of this project without any construction loans. In 2007, the property was 100% occupied and had annual revenue of approximately $2,000,000.

e.  Pine Creek Medical Office Condos, Colorado Springs, Colorado – The Pine Creek Medical Office Condos is a 28,000 square foot Class A building. This property was built by the Debtor with no construction loans in 2007 and was sold as commercial condominiums in 2008. The sale price averaged approximately $300 per square foot.

**Other Related Entities and Individuals**

Sunshine Home Development, Inc. ("Sunshine") was incorporated on October 9, 2003 and is owned one hundred percent (100%) by Jannie Richardson. Sunshine is the developer of the Colorado Crossing Project. Sunshine currently holds a Deed of Trust in the amount of $11,000,000 against otherwise unencumbered Colorado Crossing parcels as detailed later in this Disclosure Statement. When SRKO was unable to obtain financing for the project, it pledged some of the

replatted Colorado Crossing parcels to secure a Deed of Trust in the amount of eleven million dollars ($11,000,000) in favor of Sunshine so that Sunshine could continue working on the Project. This amount was based on work performed by Sunshine commencing from the time GE Johnson abandoned the Project through December 31, 2009. Since Sunshine claimed to be owed thirty two million dollars ($32,000,000) for work performed on the Project, it, like any other lien holder, attempted to assert its mechanic's lien into the Litigation in late December 2009. The El Paso County District Court issued an Order stating that Sunshine had ten (10) days to substantiate its lien. Sunshine was unable to comply with the Court's order. More information on the Litigation is detailed below.

Ho, LLC was incorporated on August 11, 2009 to provide real estate services. The initial and sole member of Ho, LLC was Jessica Stinson, Jannie Richardson's adult daughter. As of the Petition Date, Ho, LLC's members are Jessica Stinson, Allen Richardson (Jannie Richardson's adult son), Jeffrey Stinson (Jannie Richardson's adult son), Misuk Ko (Jannie Richardson's ex-sister in law), and Da Nam Ko (Jannie Richardson's sister). Ho, LLC currently holds two Deeds of Trust that secure notes totaling $2,500,000 encumbering Colorado Crossing parcels currently owned by SRKO. Ho, LLC also purchased a Note in the amount of $250,000 encumbering Colorado Crossing parcels currently owned by Spring Water Lofts, LLC. The details regarding these transactions are provided later in this Disclosure Statement.

Spring Water Lofts, LLC was incorporated on November 2, 2009 to provide real estate services. The initial and sole member was Allen Richardson. Currently, Spring Water Lofts, LLC's members are Allen Richardson, Jessica Stinson, and Jeffrey Stinson. Spring Water Lofts, LLC purchased a Colorado Crossing parcel from SRKO on approximately November 19, 2009 for $2 million. The purchase was a parcel of real property known as Colorado Crossing, Lot 1, Filing No. 2, which is approximately 6.8 acres of vacant land. The transaction was seller-financed. The Debtor subsequently sold the Note to Ho, LLC for a purchase price of $250,000 on December 21, 2009 in order to raise capital.

JR Movie, LLC was incorporated on June 18, 2007 for the purpose of managing operations for the Cinemark Movie theatre in the Colorado Crossing project. The movie theatre is not open yet and is still under construction. This entity has not begun any operations, and has no assets or

9

liabilities. The initial and sole member is Jannie Richardson.

Jessica, LLC was incorporated on March 27, 2006 to provide real estate services. The initial and sole member is Jannie Richardson. Jessica, LLC is a single purpose entity created to operate and manage the Pine Creek Village shopping center. On June 1, 2006, Jessica, LLC, obtained a non-recourse loan in the amount of $12,700,000 from Nomura Credit & Capital, Inc. secured by the Pine Creek Village property. Richardson invested the proceeds from this loan into the Colorado Crossing project. Jessica, LLC defaulted on the loan on or about April 2009 due reduced cash flow arising out of the economic conditions that affected its tenants. On March 3, 2010, the lender foreclosed on the property. Jessica, LLC currently has no assets or liabilities.

Noah, LLC was incorporated on October 5, 2001 to provide real estate services. The initial and sole member was Jannie Richardson. Currently the Debtor owns 23% of Noah, LLC, and Jannie Richardson owns the remaining 76%. Noah, LLC is a single purpose entity created to operate and manage the Candlewood Suites hotel in Colorado Springs. On May 27, 2006, Noah, LLC, obtained a non-recourse loan in the amount of $3,900,000 from Nomura Credit & Capital Inc. secured by the Candlewood Suites property. The Debtor and Jannie Richardson used proceeds from this loan to fund the Colorado Crossing project. Noah, LLC defaulted on its loan on or about April 2009 due to economic conditions. Noah, LLC filed for protection under Chapter 11 of the Bankruptcy Code on February 19, 2010. Its Chapter 11 case remains pending in the U.S. Bankruptcy Court for the District of Colorado.

JRKO, LLC was incorporated on October 27, 2003 to provide real estate services. The initial and sole member is Jannie Richardson. JRKO, LLC is a single purpose entity created to operate and manage the Comfort Inn & Suites in Overland Park, Kansas. On April 20, 2007, JRKO, LLC obtained a non-recourse loan in the amount of $4,300,000.00 from Citigroup Global Markets Realty Corp. secured by the Comfort Inn & Suites property. The loan proceeds were invested in the Debtor and used in the Colorado Crossing project. JRKO, LLC defaulted on its loan on or around January 2009 and a receiver was appointed by the lender in April 2009. The property is still operating under the receivership.

N.A. Rieger a/k/a "Buzz" Rieger ("Rieger") has invested in projects developed by Richardson and her family ventures for eighteen (18) years. He has been an investor in the Debtor's

business operations for several years. Rieger has also brought additional investors to the business. Rieger has no decision making authority with respect to Debtor's or Richardson's business transactions. Due to Rieger's long standing relationship with Richardson, he provided funds payable to Richardson under the understanding that the funds would be applied to investment in such projects and entities as Richardson deemed appropriate.

Allen Richardson is Ms. Richardson's adult son who worked as an employee of Richardson as a property manager, and is affiliated with some of Richardson's and Debtor's related entities. Allen Richardson currently holds ownership interests in the following entities: SRKO (through The Allen Richardson Dynasty Trust dated October 27, 2003), Sunshine Home Development, Inc., Ho, LLC, Orchid, LLC, Spring Water Lofts, LLC, Sunshine Home Management, LLC, and Spring Water Development, LLC.

Jessica Stinson is Ms. Richardson's adult daughter and is affiliated with some of Ms. Richardson's related entities. Ms. Stinson currently holds ownership interests in SRKO (through The Jessica Stinson Dynasty Trust dated October 27, 2003), Ho, LLC, Orchid, LLC, and Spring Water Development, LLC.

Jeffrey Stinson is Ms. Richardson's adult son and is affiliated with some of Ms. Richardson's related entities. Mr. Stinson currently holds ownership interests in SRKO (through The Jeffrey Stinson Dynasty Trust dated October 27, 2003), Ho, LLC, Orchid, LLC, and Spring Water Development, LLC.

Paul Ko is Ms. Richardson's nephew who worked as an employee of Jannie Richardson, the Debtor, and Debtor's affiliated entities as a bookkeeper from December 2007 to 2010. In January, 2010, Mr. Ko terminated his employment with Jannie Richardson and Debtor and became an independent contractor performing bookkeeping services for the Debtor and the Debtor's affiliated entities. Mr. Ko currently holds an ownership interest in Spring Water Development, LLC, but has never held any ownership interests in any of the Debtor's or Richardson's other entities.

11

**Other Pre-Petition Transfers**

      1.      Deed in Lieu of Foreclosure: Union Station Property

On February 26, 2008, Debtor borrowed the amount of $10,465,000 from First National Bank of Colorado secured by a Deed of Trust, Promissory Note and Assignment of Rents encumbering property commonly known as 1601 Wewatta St., Denver, CO. Debtor defaulted under the Note in June 2009, and the Note was sold by First National Bank of Colorado in June, 2009 to BH/JP, LLC. On November 5, 2009, Debtor executed a Deed in Lieu Agreement with BH/JP, LLC, and the property was subsequently deeded to BH/JP, LLC in connection with a foreclosure sale on or about November 19, 2009, in exchange for being released from all further liability under the loan documents.

      2.      Deed in Lieu of Foreclosure: United Heights Property

On December 17, 2007, the Debtor borrowed the amount of $6,375,000.00 from First National Bank of Colorado secured by a Deed of Trust, Promissory Note and Assignment of Rents encumbering property commonly known as 1308-1369 United Heights, Colorado Springs, Colorado. Debtor defaulted under the Note in June 2009, and the Note was sold by First National Bank of Colorado on December 29, 2009 to COOSA Real Estate Investments, LLC. On January 6, 2010, Debtor executed a Deed in Lieu Agreement with COOSA, and deeded the property to COOSA through a Warranty Deed on January 9, 2010, in exchange for a release from all further liability under the loan documents.

      3.      Deed in Lieu of Foreclosure (not recorded): Rieger

Through September 1, 2007, Debtor borrowed the total amount of approximately $1,500,000 from N.A. Rieger and the transaction was evidenced by a Promissory Note and Deed of Trust encumbering property commonly known as Dawson Ridge Parcel H, Castle Rock, Colorado. The Debtor defaulted under the Note on December 31, 2009. On January 10, 2010, Debtor executed a Deed in Lieu Agreement with N.A. Rieger in exchange for being released from all further liability under the loan documents. The Warranty Deed was executed, but was not recorded in the Douglas County official records. Rieger therefore retains a secured interest against Parcel H.

4.    <u>Foreclosure of Pine Creek Village: Jessica, LLC</u>

On June 1, 2006, Debtor borrowed the amount of $12,700,000 from Nomura Credit & Capital, Inc. secured by a Deed of Trust, Promissory Note and Assignment of Rents encumbering property commonly known as 9475 & 9420 Briar Village Point, Colorado Springs, Colorado. Debtor defaulted under the Note in June 2009, and the Note was sold by Nomura Credit & Capital, Inc. to JP Morgan Chase Bank. On March 3, 2010, the property was deeded to JPMCC 2006-LDP7 Pine Creek, LLC in connection with a foreclosure sale.

**Events Leading to Chapter 11 Filing**

The Debtor's largest project and the principal cause for the Chapter 11 filing has been the project known as Colorado Crossing. The Debtor began its development of Colorado Crossing and construction in approximately September 2007. The initial approximately $18.5 million investment in the property was funded in part by liquidation and refinancing real estate investments held by SRKO and in part by use of 1031 exchange proceeds held by Jannie Richardson. At the acquisition closing, a portion of the property was titled in the name of the Debtor and a portion of the property was titled in the name of Jannie Richardson. Thereafter, development and construction costs were funded in large part by advances made by Jannie Richardson, directly and through related entities.

Since construction began, the Debtor has invested approximately $60 million into the development of the project. The project is located in Colorado Springs, Colorado and is Colorado Springs' first mixed-use urban town center that incorporates retail, commercial, residential, and an entertainment district. Colorado Crossing spans over 153-acres and is master planned to build out 27 city blocks in the next 10 years. Over this 10 year period, plans include building out to zoning capacity which will allow 1.6 million square feet of office and retail, 2,500 multifamily residential units, and 1,000 hotel rooms. The Debtor intended initially to complete the first phase of this massive project which will showcase a 14-screen all-digital Cinemark movie theatre as well as approximately 140,000 square feet of office and retail. The Debtor did not take any construction loans for this project and has invested over $60,000,000 into this large project.

The project currently consists of the following components:

      a.    109,497 square foot office and retail building;
      b.    14,379 square foot office and retail building;
      c.    13,522 square foot office and retail building;

13

      d.       52,000 square foot Cinemark Theatre;

      e.       Three story parking structure containing 1,059 spaces; and

      f.       Approximately 130 acres of additional undeveloped surrounding ground.

The structures referenced above were constructed on a 17.5 acre portion of the total real property that comprises the project. The improved portion of the project is approximately 80-90% completed. The improvements include roadways, underground utilities, traffic signals, signage, landscaping with irrigation and plantings, and virtually all elements needed to operate a retail and commercial facility. In addition, the Debtor constructed retail and commercial buildings and a supporting 1,000 space multi-level parking facility on a 17.5 acre parcel within the project (Project, Filing 1). That construction is largely complete. The remaining 10-20% of the project includes items necessary to complete the buildings and finish work on the existing structures.

The Debtor did not use traditional construction financing to fund the project. However, when the Debtor ran into financial difficulties in 2008, the Debtor could not pay its contractor, material providers, and subcontractors and they generally left the job site.

Before the project was completed, differences arose between the Debtor and the contractors working on the project. Many of the firms employed to work on the project have filed mechanics liens which encumber the project and several left the job with work uncompleted, resulting in additional costs.

The Debtor and Ms Richardson sought financing to complete the project from a variety of lenders. However, the Debtor's pre-petition efforts to obtain third party construction financing were unsuccessful, in part due to substantial unliquidated and disputed mechanics liens asserted against the project, and in part due to changes in the real estate financing market and deterioration in the Debtors and Richardson's finances. In the fall of 2008, the U.S. and local economy had faced a downturn, and the Debtor was unable to obtain financing. The Debtor and Ms. Richardson both took significant risks to raise funds for the construction of Colorado Crossing. As the downward economy continued into early 2009, retail and commercial tenants in several projects operated by Ms. Richardson also felt the decline and many went out of business. Since many of the tenants were forced to close their doors, they were unable to pay rent, and therefore cash flow dropped below a point where debt servicing was possible. The result was that the Debtor and Ms. Richardson both had assets that were foreclosed or were given up pursuant to deeds in lieu of foreclosure in order to

14

maintain the Colorado Crossing project. Several of the Debtor's contractors filed mechanics liens against the Colorado Crossing Project as follows:

    1.    GE Johnson Construction Company, Inc. Foreclosure Lawsuit (Office/Retail Buildings A, B, and F)

The GE Johnson Construction Company, Inc. ("GE Johnson" or "GEJ"), as the general contractor, entered in to a contract with Sunshine Home Development, Inc. ("Sunshine"), as the developer, for labor and materials related to the Project, Filing 1. The construction contract is dated December 17, 2007 and relates to the construction of improvements of the Office/Retail Buildings A, B, and F within the Colorado Crossing Project. In August 2008, GE Johnson accelerated amounts owing under the contract and Sunshine failed to pay the alleged amounts due.

GE Johnson filed its Statement of Lien on September 29, 2008 in the amount of $9,258,667.70, which was later amended on October 28, 2008 to $8,684,336.53. This amount includes all of GE Johnson's subcontractor liens and claims. On November 4, 2008, GE Johnson filed a Complaint for Monetary Judgment and Mechanic's Lien Foreclosure (the "Foreclosure Action" or "Litigation") against Sunshine, SRKO as the owner of the property, and several subcontractors who had previously filed Statements of Lien against the Colorado Crossing Project, including Concrete Management Corporation. GE Johnson asserted the following claims against the defendants: (a) Breach of Contract, (b) Unjust Enrichment, and (c) Foreclosure of Mechanic's Lien. The Foreclosure Action was filed in El Paso County District Court, Case No. 08 CV 58050. Other defendants in that action include Jannie Richardson ("Richardson") (subsequently added as a party) and Sunshine Development, LLC (subsequently added as a party). On December 5, 2008, and again in September 2009, GEJ filed its First and Second Amended Complaints for Monetary Judgment and Mechanic's Lien Foreclosure to include additional lien claimants.

On January 14, 2009, Sunshine and SRKO asserted the following counterclaims against GEJ: (a) Breach of Contract (acceleration of completion schedule), and (b) Excessive Lien.

    2.    Concrete Management Corporation, Elevated Structural Decks, Inc., and Rio Grande Co. (Cinemark Theater, parking structure, Buildings 9A and 10A)

While GE Johnson was the general contractor and performed work on Buildings A, B & F, SRKO engaged Sunshine as its general contractor to construct other buildings within the Colorado

Crossing Project, Filing 1. This construction consisted of the Cinemark Theater, the parking structure, and Buildings 9A and 10A. As the general contractor for this segment of the project, Sunshine engaged several subcontractors to perform work on the Cinemark Theater and the parking structure, including Concrete Management Corporation (collectively, the "Sunshine Claimants"). On September 11, 2007, Concrete Management Corporation (hereafter, "CMC"), as subcontractor, entered into a Master Subcontract with Sunshine, as general contractor, to perform certain work with respect to the Cinemark Theater and the parking structure, located on the Project, Filing 1.

### a. Cinemark Theater

The original contract price for the construction of the Cinemark Theater was $1,592,937.80. Disputes exist as to certain change orders and credits related to this job. In its Request for Payment dated October 3, 2008, CMC confirmed the reduced contract amount of $1,502,937.55. According to Sunshine's records, Sunshine spent a total of $988,496.04 completing the work contemplated in the CMC contract but not completed.

The following subcontractors either filed liens or made demand for payment from Sunshine as a result of CMC's failure to pay: Top Quality Drilling, Inc., $16,831.07, and Fenex Post Tension, $63,851.54, for a total of $63,851.54. Sunshine records reflect a total of $669,535.88 paid to CMC with respect to work performed by CMC on the Cinemark Theater. Sunshine's records and analysis reflects that CMC owes Sunshine a total of $235,806.98. These amounts are likely disputed by CMC.

### b. Parking Structure

The contract price for the parking structure pursuant to the Pricing Agreement between Sunshine and CMC dated April 16, 2008 is $2,080,000. Sunshine's records and analysis reflect that CMC performed seventy-two percent (72%) of the contract, or $1,458,700 of the contract price. Sunshine's records and analysis reflect that Sunshine performed work in the amounts of $54,870 and $398,000 (slab on grade and topping), and provided rebar materials in the amount of $168,430, for a total of $469,713. Sunshine's records reflect payment to CMC in the amount of $1,165,051.26. Also, CMC received credits under the contract in the total amount of $72,552, representing mesh supplied by Rio Grande and seven (7) acid etch sill panels from Stresscon.          Sunshine's records and analysis reflect that Sunshine owes CMC the amount of $311,330.74. These amounts

16

are likely disputed by CMC.

### c. Buildings 9A and 10A

There was no original executed contract for the construction of Buildings 9A and 10A . On July 12, 2008, Jannie Richardson, on behalf of Sunshine, entered into a letter agreement with CMC for CMC to proceed, to a limited extent, with the foundation and footings for Buildings 9A and 10A. The letter agreement provided that CMC would only proceed with shop drawings. However, despite the absence of an agreement, CMC had materials delivered to the job site and did not promptly notify Sunshine of such deliveries. In fact, the letter instructed CMC proceed with the drawings until a contract was signed, and Sunshine never authorized CMC to move forward and proceed with delivery of material to a construction site that was not prepared to receive such material. The letter agreement reflected a price of $1,513,499 per building, but the agreement was never memorialized and Sunshine and CMC did not enter into a contract for this particular work. The materials caused to be delivered by CMC to Buildings 9A and 10A are not incorporated in Phase I of the Colorado Crossing project and is currently the subject of the Foreclosure Action. Sunshine's records show that Rio Grande delivered materials to the site in the amount of $78,398.08. The parties disagree on the amounts due. CMC continues to claim the full contract price of $688,000, even though Sunshine believes that only $78,398.08 in materials were actually delivered. Sunshine's records show that CMC owes Sunshine the sum of $609,601.92. These amounts are likely disputed by CMC.

### d. Elevated Structural Decks, Inc./Cinemark Theater

Sunshine also entered into a Master Subcontract with Elevated Structural Decks, Inc. ("ESD") dated December 20, 2007 to perform certain work with respect to the Cinemark Theater. The original contract price was $1,288,500, which was later reduced. ESD's scope was very specific and all inclusive, including fabricated steel for stadium seating, bent plates, faux windows, and handrails.

#### i.     Rio Grande/ESD Subcontract.

ESD made arrangements with Rio Grande Co. ("Rio Grande"), a steel supplier, to fabricate and deliver the steel to Sunshine in accordance with the contract. ESD and Rio Grande's contract did not include the stadium seating materials (bent plates, faux windows, hand rails, etc.). Sunshine

17

pre-paid a discounted contract price in full in the amount of $1,262,730 on March 7, 2008 through a joint check issued to ESD and Rio Grande. The check was cashed on March 12, 2008 and Rio Grande reimbursed one-half of the joint check to ESD.

On October 21, 2008, Rio Grande issued a separate purchase order to Sunshine in the amount of $207,787.84 since Rio Grande was going to fabricate the steel for that amount. Sunshine, however, believed it had already paid for the fabrication in its March 7, 2008 check per the scope of the Sunshine/ESD contract. As a result, Sunshine did not agree to pay twice. Sunshine's records reflect that Rio Grande was required to deliver the fabricated steel within ninety (90) days of the date of Sunshine's check. Instead, Rio Grande delivered unfabricated steel to the job site piece meal through December 23, 2008 and failed to complete fabrication of the steel to the contract requirements. As a result, Sunshine fabricated and assembled the steel, and Sunshine's records and analysis reflects that Sunshine performed work in the amount of $557,727.40. Sunshine's records and analysis reflect that ESD owes the amount of $557,727.40 to Sunshine.

Rio Grande filed its first Statement of Lien on January 6, 2009 in the total amount of $949,824.33, and then filed an Amended Statement of Lien on February 6, 2009 in the total amount of $980,671.55, which includes the amount of $384,417.00 representing amounts charged by ESD for work performed on the Cinemark Theater and the parking structure. CMC and ESD are two separate entities according to the Secretary of State records, but they have stated in their discovery responses that they "share employees", and the same attorney represented both of them in the GE Johnson Foreclosure Action.

### e. Mechanics Liens/Lawsuit

CMC filed its first Statement of Lien on October 28, 2008 in the amount of $1,307,088.35 representing labor and materials with respect to the Cinemark Theater. CMC filed a second Statement of Lien on November 24, 2008 in the amount of $1,461,593.70 representing additional labor and materials with respect to the parking structure. CMC's total claim amount is $2,768,082.05.

On November 21, 2008, CMC filed an Answer and Cross Claim in the GE Johnson Foreclosure Action. CMC asserted the following claims against Sunshine: (a) Breach of Contract ($2,768,682.05, plus change orders in the approximate amount of $200,000.00), (b) Breach of

18

Fiduciary Duty/Trust Fund, (c) Mechanic's Lien, and (d) Unjust Enrichment. CMC further asserted an unjust enrichment claim against SRKO. On March 3, 2009, CMC filed Amended Cross Claims against the Sunshine Defendants to include a "bad check claim" in the amount of $71,838.71, unjust enrichment in connection with the bad check claim, and a breach of contact claim with respect to Sunshine performing work within the scope of CMC's contract, resulting in a loss of profits for that portion of the contract.

On January 19, 2009, Sunshine and related parties asserted the following counterclaims against CMC and ESD: (a) Breach of Contract (CMC failed to complete the agreed upon scope of work in both the Cinemark Theater and the parking structure, and it failed to perform its work in a good and workmanlike manner); and (b) Excessive Lien (both of CMC's liens improperly encumber property for which CMC never performed work, and its liens charged the Sunshine Defendants for work that was never completed and for work that may have been defective).

A more detailed list of mechanics lien claimants against the Debtor's real estate is listed later in this Disclosure Statement.

As a result of its inability to resolve the pending mechanics lien actions or to obtain adequate construction financing to complete the project, the Debtor was forced to file for protection under Chapter 11 of the Bankruptcy Code on February 10, 2010 ("Petition Date"). Likewise, Jannie Richardson, as a guarantor on many of the SRKO debts and potential related liability, filed for protection under Chapter 11 of the Bankruptcy Code on March 25, 2010.

## DESCRIPTION OF ASSETS

The following is a description of the Debtor's assets as of the Petition Date.

## Real Property[1]

The Debtor purchased 153 acres of raw land on June 1, 2006. Since the purchase, the Debtor obtained an approved development plan, platted portions of the property, constructed a mixed-use

---

[1] Real property located at "70 West 6th Avenue, #206 and #207, Denver, Colorado 80203" and "Vacant Land A-G, Westfield Trade Center & I-L1, Dawson Ridge Subdivision, Castle Rock, Colorado 80104", also known as "Dawson Ridge, Castle Rock, Colorado, vacant land consisting of 382.42 acres" were the subject of a motion for relief from stay during the Bankruptcy case. The secured creditor, Pueblo Bank and Trust, obtained relief from stay and the property is subject to the bank's foreclosure.

commercial project and completed site improvements and streets. The anticipated Colorado Crossing Project consists of a mixed-use development that is planned to eventually have 1,600,000 square feet of retail and office space and 1,600 multi-family residential units.

"Project, Filing 1" consists of a theater, retail, and office property that is under construction and will contain a total of 185,911 square feet of gross leasable area when completed. "Project, Filing 1" includes a 46,309 square foot 14-screen cinema, office space totaling 98,338 square feet and ground floor retail space totally 41,364 square feet. The improvements are still under construction and are approximately 80-90% complete. The Debtor anticipates that "Project, Filing 1" will require an additional six months to complete the project at 100%. Completion of the projection is dependent upon the necessary organization and funding for completion.

Jannie Richardson through Sunshine hired Integra Realty Resources to perform an appraisal of "Filing 1." The Appraisal is dated November 1, 2009 and estimates the fair market value of Filing 1 at fifteen million dollars ($15,000,000).

"Project, 109 Acres" is part of the larger mixed-use Colorado Crossing commercial project. This parcel has been divided into six separate development parcels by the Debtor. Currently, two streets have been constructed on the site and all streets are intended to be private and maintained by a homeowners association upon completion. Reliant upon funding, the Debtor intends to construct all infrastructure improvements including streets and utilities. Jannie Richardson through Sunshine hired Integra Realty Resources to perform an appraisal of "Project, 109 Acres." The Appraisal is dated December 15, 2009 and estimates the fair market value of the property in an "as is" condition at eleven million dollars ($11,000,000).

Other parties may have obtained independent appraisals of the Project, Filing 1 and Project, 109 Acres. The Debtor believes that the fair market value may lie somewhere between the values as proposed by the different appraisals.

On November 20, 2009, Jannie Richardson conveyed to the Debtor via Quit Claim Deed certain real property known as Lots 1, 2, 3, 4 and 5, and Tract A, Colorado Crossing, Filing No. 2. See a map of Lots 1, 2, 3, 4 and 5, and Tract A, attached hereto as Exhibit A. In exchange, on December 29, 2009, the Debtor conveyed certain real property to Jannie Richardson comprised of

20

approximately 34.783 acres via Quit Claim Deed. Both transfers are located in the currently vacant land area of the Colorado Crossing Project. See a map of the 34,783 acres attached hereto as Exhibit B. Although the meets and bounds descriptions on the relevant deeds accurately describe the transfers, the related amended plat has not yet been filed with El Paso County. Therefore, the parcel descriptions on file with the County differ from the actual land ownership designations. A brief review of the attached maps clarifies which property is owned by whom.

A further description of the Debtor's real property as of the Petition Date is as follows:

1.  "Project, Filing 1" means that portion of Colorado Crossing consisting of a total land area of approximately 17.5 acres and described as Filing 1, Panel Nos. 6221301012 and 6221301013. See map of the Project, Filing 1, attached hereto as Exhibit C.

2.  "Project, 109 Acres" means that portion of Colorado Crossing consisting of total land area of approximately 109 acres and described as vacant land. See a map of the 109 Acres attached hereto as Exhibit D. This subject land includes Colorado Crossing, Lots 2, 3, 4, and 5, and Tract A, Filing No. 2, vacant land, which adds an additional approximate 12.83 acres for a total of approximately 121.83 acres. The 109 Acres essentially includes all the SRKO real estate owned in Colorado Crossing, except for the Project, Filing 1.

3.  Dawson Ridge, Castle Rock, Colorado, vacant land consisting of 382.42 acres.[1] The Debtor estimates the fair market value of this property as approximately $8,000,000.

4.  Dawson Ridge, Castle Rock, Colorado, Parcel H, vacant land consisting of 14.5 acres. The Debtor estimates the fair market value of this parcel at approximately $1,500,000.

5.  Twin Oaks, Castle Rock, Colorado, vacant land consisting of 66 acres. The Debtor values this parcel at approximately $860,000.

6.  70 West 6th Ave, Denver, Colorado, Unit #206 & #207, Residential condos.[1] The Debtor values these condominium units at approximately $180,000 per unit, or a total of $360,000.

21

**Personal Property**

The following is the list of personal property in the Debtor's possession as of the Petition Date unless otherwise noted.

| Asset (fair market value) | Est. Value |
|---|---|
| Bank accounts (as of Petition Date) | $      448.00 |
| 23% interest in Noah, LLC | 0.00[2] |
| 100% interest in JRKO, LLC | 0.00[3] |
| 100% interest in JR Movie, LLC (no assets) | 0.00 |
| 100% interest in Jessica, LLC (no assets) | 0.00 |
| Machinery, fixtures, equipment and supplies | |
| Used in business (subject to secured interests) | 162,000.00 |
| Total | $ 162,448.00 |

The Debtor also owns miscellaneous personal property for installation into Project, Filing 1. This property has not been valued and the Debtor intends to have it valued prior to Plan confirmation.

**Avoidance Actions**

The Debtor is reserving the right to bring Avoidance Actions pursuant to 11 U.S.C. §§ 545 through 550 and state law fraudulent conveyance actions. The Debtor has evaluated these claims to determine which, if any, such claims are viable. The total payments made to non-insider creditors within the 90 days prior to the Petition Date was approximately $0  Payments of approximately $0 were made to insiders within the year preceding the Petition Date for salaries, expense reimbursements, equipment rental, and services performed. Payments to insiders within a year prior to the Petition Date are $0.   If the Debtor discovers any payments not listed above, it will review and evaluate the potential benefit to the estate in pursuing any claims or avoidance actions.

On December 29, 2009, the Debtor conveyed property consisting of approximately 34 acres within the Colorado Crossing project to Jannie Richardson. This transfer was an exchange for Ms. Richardson's conveyance of Lots 1, 2, 3, 4, and 5 and Tract A, Colorado Crossing, to the Debtor. The transfers were intended to be of equivalent value, and the Debtor believes that they were of

---

[2] The value of Noah, LLC is estimated at $0-$850,000 based on its books and records. The true fair market value, however, is speculative.
[3] The value of JRKO, LLC is estimated at $0 because its liabilities exceed its assets.

equivalent value, although no appraisals of the parcels have been commissioned to support the values.

The Plan reverses the transactions that the Debtor believes are avoidable, including transactions involving Spring Water Lofts, LLC and Ho, LLC. The Plan also treats the Sunshine claims, secured and unsecured, as $0. Further, the Debtor's Deeds of Trust provided to Ho, LLC on account of a $2.5 million debt are currently under review by the Debtor, however, in light of the proposed Plan, it appears that sufficient equity exists to pay the Debtor's allowed unsecured creditors without removing or avoiding the Ho, LLC transfers.

In light of the foregoing, the Debtor, at this time, is reviewing the potential success of bringing any avoidance actions. The Debtor continues to review all avoidance claims and is reserving the right to bring such causes of action. As with any litigation, the issues with respect to the avoidance actions, as discussed herein, would be aggressively contested. Determinations of fact and law would need to be made by the Court. It is impossible to predict how the Court would ultimately rule. The Debtor expects that the recovery to creditors as proposed under the Plan from ongoing operations will greatly exceed any reasonable recovery that could be obtained from pursuit of the avoidance actions.

## DESCRIPTION OF LIABILITIES

### A.   Priority Claims

#### 1.  Priority Claims

Priority Claims are defined in the Plan as any pre-petition Claim entitled to a priority payment under 11 U.S.C. § 507(a) of the Bankruptcy Code, excluding any Administrative Claim or Tax Claim.

#### 2.  Administrative Claims

Administrative Claims are those Claims for payment of an administrative expense of a kind specified in §503(b) or §1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to §507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of

23

the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estate under 28 U.S.C. §1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under §546(c)(2)(A) of the Bankruptcy Code. The Administrative Claims for the professional fees incurred during the case are as follows:

### a.   Bankruptcy Counsel

The Debtor retained Kutner Miller Brinen, P.C. ("KMB") as its bankruptcy counsel. The Debtor provided KMB with a retainer in the amount of $42,113.90 for post-petition services.  KMB has not yet filed an application for approval and payment of fees and costs in this case.  The Debtor estimates that the total legal fees and costs for KMB due from the Debtor as of the estimated date on which the Plan will become effective, December 30, 2010, will be approximately $50,000.  This figure does not include fees and costs that will be paid with the retainer or fees and costs paid directly by the Debtor prior to confirmation.  These fees could increase or decrease depending on the level of litigation over the Plan and Claims.

### b.   Special Counsel

SRKO retained Sweetbaum, Levin and Sands, P.C. ("Sweetbaum") as special counsel to represent the Debtor in certain mechanics lien litigation related to the Colorado Crossing Project. SRKO provided Sweetbaum with a retainer in the amount of $15,000 for post-petition services. Sweetbaum has not yet filed an application for approval and payment of fees and costs.  SRKO estimates that the total legal fees and costs for Sweetbaum due from the SRKO as of the estimated date on which the Plan will become effective, December 30, 2010, will be approximately $30,000. This figure does not include fees and costs that will be paid with the retainer or fees and costs paid directly by SRKO prior to confirmation.  These fees could increase or decrease depending on the level of litigation.

### c.   Accountants

SRKO retained Nelson & Company, P.C. ("Accountant") to provide professional accounting services which includes the preparation of Federal and State tax returns for the year ended December 31, 2009. Accountant agreed to provide these services for a flat fee of $10,500. Accountant has not yet filed an application for interim approval of fees and costs.

The Debtor has paid all other administrative expenses in the ordinary course of business

during the course of the bankruptcy case, and therefore does not believe there will be any other material administrative claims asserted against the estate.

### 3. Tax Claims

Tax Claims are any Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. §507(a)(8). Taxing authorities have filed proofs of claim as explained in the secured claims section below, or are properly treated as secured claims.

### B.    Secured Claims

### 1.    El Paso County Treasurer.

The El Paso County Treasurer filed a proof of claim in the total amount of $740,590.83 secured by the Debtor's real property as follows:

| | |
|---|---|
| a. Parcel No. 6221301009 | |
| Past due amount: | $6,167.71 |
| 2009 real estate taxes: | $5,422.23 |
| 2010 estimated real estate taxes: | $8,259.83 |
| | |
| b. Parcel No.6221301010 (no longer designated as this parcel no. in the County's records) | |
| Past due amount: | $38,932.82 |
| 2009 real estate taxes: | $34,445.82 |
| | |
| c. Parcel No. 6221301011 | |
| Past due amount: | $78,031.76 |
| 2009 real estate taxes: | $69,054.69 |
| 2010 estimated real estate taxes: | $69,054.68 |
| | |
| d. Parcel No. 6221301012 | |
| Past due amount: | $18,728.83 |
| 2009 real estate taxes: | $206,182.48 |
| 2010 estimated real estate taxes: | $206,182.49 |
| | |
| e. Parcel No. 6221301013 | |
| Past due amount: | $59.95 |
| 2009 real estate taxes: | $33.77 |
| 2010 estimated real estate taxes: | $33.77 |
| Total | $740,590.83 |

The designation of taxes for each parcel is pursuant to the plat and related parcel numbers

currently on file with El Paso County.  The property descriptions as provided in the Debtor's real property section of this Disclosure Statement may vary slightly from the parcel numbers. Nevertheless, Project, Filing 1 is the same as Parcel Nos. 3220301012 and 6221301013.  The remaining tax liability can generally be described as encumbering approximately the Project, 109 Acres.

2.      **Denver County Treasurer.**

The City and County of Denver filed a proof of claim in the amount of $6,696.10.  The claims are secured by the Debtor's real property as follows:

| | |
|---|---|
| 70 West 6th Avenue, Unit 206 (2009/2010 real estate tax): | $2,139.16 |
| 70 West 6th Avenue, Unit 207 (2009/2010 real estate tax): | $2,111.80 |
| Unredeemed real estate tax sales (both units) | $2,445.14 |
| Total | $6,696.10 |

3.      **Douglas County Treasurer**

SRKO estimates that that it is liable to the Douglas County Treasurer for real estate taxes on its Dawson Ridge real estate located in Castle Rock, Colorado in the approximate amount of at least $28,846 pursuant to the Douglas County Real Estate Records.  Douglas County has not yet filed a proof of claim.  The claims are secured by the following real estate: (1) Dawson Ridge, Parcel H, vacant land comprised of approximately 14.5 acres; (2) Dawson Ridge, vacant land comprised of approximately 382.42 acres; and (3) Twin Oaks, vacant land comprised of approximately 66 acres.

4.      **Mechanics lien claimants holding allowed claims encumbering the Project, Filing No. 1.**

The parties who hold mechanics lien claims against the Project, Filing 1 were contracted by the developer, Sunshine, to provide material and labor to improve the real estate.  These entities did not enter into a contract or agreement with the Debtor.  As a result of the non payment of claims, a number of entities filed mechanics liens against the Project, Filing 1.  Some claimants also filed liens against other real property owned by the Debtor, however, the validity of those liens are yet to be determined.  A list of the alleged lien claimants are listed below, however, the Debtor reserves the right to object to the amount of any of these claims.  Some of the claims have been partially liquidated in the Litigation.  Further, some of the claims may have changed or been amended in the

Litigation.

| Creditor Name | Notes | Claim | Disputed claim amount |
|---|---|---|---|
| 3D WEB MEDIA | | $ 9,890.00 | |
| ABC SUPPLY CO | | $ 721.41 | |
| BANNER (VENDOR) | GE Subcontractor | $ 55,607.11 | $ 5,000.00 |
| BARTON LEASING, INC. | | $ 123,852.20 | |
| BIBLE ELECTRIC, INC. | | $ 612,900.00 | $ 50,000.00 |
| BIG HORN PLASTER (SUB) (claim assigned to Hill Investment Corp.) | GE Subcontractor | $ 132,586.72 | $ 78,294.00 |
| BLUEPRINTS INC | | $ 26.20 | |
| BRICKSTONE (VENDOR) | | $ 146,668.32 | |
| C&C SAND AND STONE | | $ 153,824.61 | |
| CARLSON SYSTEMS INC | | $ 1,309.70 | |
| CHIEF PETROLEUM CO | | $ 2,375.47 | |
| CO DOORWAYS (VENDOR) | GE Subcontractor | $ 56,556.89 | |
| COLORADO MACHINERY | | $ 2,557.10 | |
| CONCEPTS (SUB) | GE Subcontractor | $ 9,609.60 | $ 9,609.60 |
| CONCRETE MGMT | | $ 1,013,367.38 | $ 1,307,088.35 |
| CONCRETE MGMT | | | $ 1,461,593.70 |
| CONCRETE MGMT | Bad Check/related to mechanics lien? | | $ 71,838.71 |
| CONCRETE MGMT | Unjust enrichment | | $ 2,768,682.05 |
| CPS DISTRIBUTORS | | $ 30,077.22 | |
| CSV/VOLVO RENTS | | $ 33,775.47 | |
| DOUGLASS ROOF | GE Subcontractor | $ 367,594.65 | $ 340,032.00 |
| DRAKE WILLIAMS (SUB) | GE Subcontractor | $ 2,135,581.51 | $ 646,200.00 |
| E LIGHT (SUB) | GE Subcontractor | $ 362,041.41 | $ 136,954.45 |
| EDDIE BISHOP | | $ 53,500.00 | |
| ENTECH ENGINEERING, INC | | $ 126,670.00 | |
| FIREBAUGH PRECAST | | $ 2,490.61 | |
| FRONT RANGE REDI-ROCK | | $ 91,533.55 | |
| GARDNER SIGNS | | $ 39,813.48 | |
| GARDNER SIGNS | | $ 39,813.48 | |
| GE JOHNSON (GC) | This claim should be reduced | $ 8,684,336.53 | $ 846,397.15 |

| | by the relevant "GE Subcontractor" claims, which are duplicative | | | | |
|---|---|---|---|---|---|
| GENERAL CEILING (SUB) | GE Subcontractor | $ | 230,701.37 | $ | 215,866.00 |
| GLOVER MASONRY (SUB) | GE Subcontractor | $ | 472,278.92 | $ | 10,280.20 |
| GRACE SEALANTS (SUB) | GE Subcontractor | $ | 32,798.52 | | |
| GRAINGER | | $ | 4,123.38 | | |
| GYPSUM PRODUCTS | | $ | 10,899.82 | | |
| H&E EQUIPMENT | | $ | 41,256.69 | | |
| HD CONSTRUCTION SUPPLY | | $ | 24,006.66 | | |
| HARDING NURSERY | | $ | 45,160.55 | | |
| HERBLAN INSULATION | | $ | 42,855.00 | $ | 42,855.00 |
| HONEYWELL INC. FKA NOVAR | | $ | 17,599.46 | | |
| HORIZON GLASS (SUB) | GE Subcontractor | $ | 209,338.98 | $ | 41,473.00 |
| INTERSTATE MECHANICAL | | $ | 70,000.00 | | |
| JC JONES EXCAVATION, LLC | | $ | 88,138.45 | | |
| KEN CARYL GLASS | | $ | 33,750.00 | $ | 9,404.00 |
| KWAL PAINT | | $ | 154,708.79 | | |
| LAFARGE WEST, INC. | | $ | 442,881.20 | | |
| LPR CONSTRUCTION | | $ | 240,838.04 | | |
| LSC TRANSPORTATION | | $ | 14,246.45 | | |
| MECHONE, INC | Olson Sub Lien | $ | 129,762.00 | | |
| MIDWEST BARRICADE | | $ | 1,605.63 | | |
| NES, INC | | $ | 75,784.14 | | |
| OBERMAYER REBMANN | | $ | 3,856.00 | | |
| OLSON PLUMBING (SUB) | GE Subcontractor/This claim should also be reduced by the "Olson Sub Lien" | $ | 1,081,918.64 | $ | 82,501.00 |
| ONSITE LIGHTING | | $ | 33,642.69 | | |
| OTIS ELEVATOR | | $ | 85,831.00 | | |
| OVERHEAD DOOR (SUB) | GE Subcontractor | $ | 11,236.18 | | |
| OZ ARCHITECTS | | $ | 404,937.16 | | |
| PACIFIC COAST SUPPLY | | $ | 23,884.05 | | |
| PARKER STEEL (SUB) | GE Subcontractor | $ | 25,075.62 | $ | 4,000.00 |
| PENTON MEDIA | | $ | 4,036.00 | | |

| | | | |
|---|---|---|---|
| PERKEY STEEL | | $ 278,378.00 | |
| PIKES PEAK STEEL | | $ 5,825.06 | |
| POWERS THERMAL INSULATION | | $ 82,079.12 | |
| R&R ENGINEERS | | $ 1,802.50 | |
| RAMPART SUPPLY | | $ 6,365.71 | |
| REGENCY LIGHTING | | $ 16,380.30 | |
| RIAL HEATING | | $ 219,968.90 | |
| RIO GRANDE | | $ 258,195.81 | |
| RIO GRANDE | CMC SUB Lien | $ 259,660.66 | |
| RIO GRANDE (ESD) | | | $ 384,417.00 |
| RK MECHANICAL | | $ 250,437.55 | |
| ROCKWELL CONSULTING, INC. | | $ 83,735.00 | |
| ROLLING PLAINS (SUB) | GE Subcontractor | $ 61,474.39 | $ 7,060.00 |
| SCHUMANN COMM | | $ 70,722.44 | |
| SHERMAN & HOWARD LLC | | $ 2,622.50 | |
| SHERWIN WILLIAMS | | $ 1,043.14 | |
| SIMPLEX GRINNELL (SUB) | GE Subcontractor | $ 201,645.98 | $ 58,401.75 |
| SMELKER CONCRETE | | $ 1,500.00 | |
| STRESSCON | | $ 1,859,886.00 | |
| SUPERIOR ROOFING | | $ 18,465.43 | |
| SUPERIOR STEEL | | $ 15,762.50 | $ 11,183.78 |
| TAYLOR FENCE (SUB) | GE Subcontractor | $ 7,649.00 | |
| THYSSEN KRUPP (SUB) | GE Subcontractor | $ 125,575.95 | $ 23,015.00 |
| TOP QUALITY DRILLING | | $ 16,453.00 | |
| TRANSIT MIX | | $ 934,378.47 | $ 34,233.75 |
| TRANSIT MIX | | $ 300,006.39 | |
| TROPWEN ENTERPRISES | | $ 1,803,795.04 | |
| US METALS LLC | | $ 7,475.22 | |
| WHITECAP | | $ 24,006.66 | |
| WINDSOR CONCRETE, INC.(SUB) | GE Subcontractor | $ 197,684.97 | |
| WORLD OF TILE | | $ 8,072.73 | |
| **TOTAL (estimated)** | | $ 25,467,280 | $ 7,752,739 |

The total GE Johnson subcontractor claims are estimated at $5,776,948.  The total Olson

subcontractor lien claims are estimated at $129,762. The CMC subcontractor lien claims are estimated at $259,660.66. Based on the duplication of claims, the total mechanics liens filed against the Project, Filing 1 is estimated at approximately $19,300,910. Amongst other claim disputes, the Debtor believes the GE Johnson claim is overstated by approximately $2,505,084.15 which includes approximately $198,983.60 in overbilling by GE Johnson. The overbilling came to the Debtor's attention when reviewing GE Johnson's subcontractor's contracts compared to what was being billed to the Debtor. A summary of the Debtor's disputes as to the GE Johnson claim and its subcontractors' claims are attached hereto as Exhibit H. The total amount of claims is anticipated to be resolved in the Litigation. This list is meant to provide a general understanding of the claims as opposed to an exact dollar amount. A list of the proofs of claims filed by mechanics lien claimants is attached hereto as Exhibit G.

Sunshine also filed a mechanics lien in the amount of $31,993,077.34 against the Project, Filing 1, however, the Debtor listed this claim as disputed and the mechanics lien was denied in the Litigation.

**5.** **Mechanics lien claimants holding allowed claims encumbering the Project, 109 Acres.**

The parties who hold mechanics lien claims against the Project, 109 Acres are listed below.

| | | |
|---|---|---|
| a. | Rio Grande | $78,398.08 (Encumbering Lots 1, 2, 3, 4 and 5, and Tract A, Colorado Crossing Filing No.2) |
| b. | LSC Transportation Consultants, Inc. | $14,246.45 (This claim is duplicative of the claim filed against the Project, Filing 1) |
| c. | Schumann Communications, LLC | $70,722.44 (This claim is duplicative of the claim filed against Project, Filing 1. The claim alleges an encumbrance on 158.247 acres of the Colorado Crossing Project) |
| d. | Rockwell Consulting, Inc. | $45,700 (This claim is duplicative of a portion of the claim filed against |

Project, Filing 1. This claim alleges
an additional encumbrance on Filing 2
of the Colorado Crossing Project in
the amount of $45,700)

### 6.    Ho, LLC

Ho, LLC was a party to several transactions with the Debtor. The Debtor issued a Note and Deed of Trust in the amount of $1,200,000 in favor of Ho, LLC as evidenced by a Promissory Note dated November 19, 2009. This note is secured by a Deed of Trust dated November 19, 2009 and recorded in the El Paso County Real Property Records at Reception No. 209134195. The Deed of Trust encumbers Lots 2, 3, 4, and 5 of Filing 2 within the Colorado Crossing project.

The Debtor issued a Promissory Note and a Deed of Trust in favor of Ho, LLC in the amount of $1,300,000 secured by certain real property. The Deed of Trust was initially recorded, and then was subsequently re-recorded as corrective documents. The corrected document was recorded under reception #209134194 in El Paso County, CO on November 20, 2009. The Deed of Trust encumbers the 109 acres of vacant land on Colorado Crossing and 66 acres of vacant land in Castle Rock (Twin Oaks). It appears the Deed of Trust encumbering the 66 acres in Douglas County may not have been properly recorded. As such, the Ho, LLC lien against the 66 acres may not be a perfected lien.

Ho, LLC is also a party to a transaction between Spring Water Lofts, LLC and the Debtor. Spring Water Lofts, LLC ("SWL") purchased real estate known as Lot 1, Colorado Crossing Filing No. 2 from the Debtor on November 20, 2009 for $2 million. The transaction was seller financed. SWL entered into a $2 million note in favor of the Debtor and the Debtor issued a Warranty Deed for Lot 1 in favor of SWL recorded in the Real Property Records of El Paso County on November 20, 2009 at Reception No. 209134197. SWL executed a Deed of Trust in favor of the Debtor for the purchase price, recorded in the Real Property Records of El Paso County on November 20, 2009 at Reception No. 209134198. Subsequent to the SWL purchase, in order to raise immediate cash, the Debtor sold the Note to Ho, LLC for $250,000 and the Debtor assigned the Deed of Trust to Ho, LLC which was recorded in the El Paso County Real Property Records at Reception No. 209146414 on December 22, 2009. This transaction will be reversed under the Plan.

31

7.   **Sunshine Development Home Development, Inc.**

On September 15, 2009, the Debtor issued a Note in the amount of $11,000,000 in favor of Sunshine Home Development Inc. ("Sunshine"). The note was secured by a Deed of Trust and recorded in the El Paso County Real Property Records on December 23, 2009 at Reception No. 209147137. The Deed of Trust encumbers the Project, 109 Acres. This note and deed of trust are to be reversed or avoided under the Plan.

8.   **Pueblo Bank & Trust Company.**

On June 16, 2008, the Debtor borrowed $7,865,000.00 from Pueblo Bank & Trust against the Dawson Ridge property located in Castle Rock, Colorado and comprised of approximately 382.42 acres of vacant land. The Debtor used proceeds from this loan for the Colorado Crossing project. A Deed of Trust was recorded on June 16, 2008 in the Real Property Records of Douglas County. The Bank filed a proof of claim in the amount of $8,619,318, however, this amount includes interest and other charges. The Bank's claim also states that it estimates the value of the collateral as $5.2 million, which presumably includes units 206 and 207 described below.

On approximately November 12, 2008, the Debtor entered into a Promissory note for $225,000 secured by two condominium units located at 70 West 6th Avenue, Denver, Colorado, Units 206 and 207. The Bank's proof of claim lists this debt as $243,280, which also includes interest and other charges.

9.   **N.A. Rieger**

N.A. Rieger made a loan to Debtor in the amount of $1,500,000 over the course of 5 years. The first loan was funded on November 1, 2002 in the amount of $450,000 and another $400,000 on November 5, 2002. The next loan was made on April 27, 2006 in the amount of $300,000. Another loan was made on May 11, 2006 in the amount of $30,000 as well as $320,000 on December 27, 2006. A Deed of Trust which included all of the above referenced loans was recorded on October 11, 2007 at Reception No. 2007080230 in the Real Property Records of Douglas County, Colorado. This Deed of Trust encumbers the property known as Twin Oaks, Parcel H comprised of approximately 14.5 acres of vacant land located in Castle Rock, Colorado.

10.   **Pinnacle Business Finance, Inc.**

On October 17, 2008, Debtor entered into an Equipment Financing Agreement with Pinnacle

32

Business Finance, Inc. ("Pinnacle") and agreed to pay Pinnacle $123,318.13 for the purchase of certain construction equipment. This agreement required sixty equal monthly payments of $2,655. The Debtor entered into a second Equipment Financing Agreement with Pinnacle on December 22, 2008 and agreed to pay Pinnacle $44,688.75 for the purchase of additional equipment. This agreement required sixty equal monthly payments of $977.16. The loans are secured by the all of Debtor's financed equipment.

## C.    Leases and Executory Contracts

As provided in the Plan, on the Effective Date of the Plan, the Debtor will assume those executory contracts and unexpired leases listed in the Plan at Exhibit A, which have not been assumed by prior Order of the Court prior to the Confirmation Date. On the date of the entry of an Order confirming the Plan, the Debtor shall be the holder of all right, title and interest to the assumed leases and contracts and such assumed leases and contracts shall be in full effect and binding upon the Debtor and the other parties thereto. Confirmation of the Plan shall constitute a determination that the payments to be made to said creditors pursuant to the Plan satisfy all conditions precedent to assumption and assignment set forth in 11 U.S.C. § 365(b) and (f).

As to rejection of the leases and executory contracts, on the Effective Date of the Plan, the Debtor will reject all executory contracts and unexpired leases to which it is a party which are listed in the Plan at Exhibit B, attached hereto and incorporated herein by reference which have not been rejected by prior Order of the Bankruptcy Court prior to the Confirmation Date. Executory contracts and unexpired leases will be rejected pursuant to the provisions of 11 U.S.C. §365. Any executory contract or unexpired lease not assumed in accordance with the Plan shall be rejected.

All proofs of claim with respect to claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Bankruptcy Court within twenty (20) days after the earlier of (i) the date of the Bankruptcy Court order approving the Debtor's rejection of such executory contract or unexpired lease or (ii) the Confirmation Date. Any claims not filed within such time shall be forever barred against the Debtor, its estate and property and any such Claims shall be disallowed in full. Claims arising from such rejection, to the extent Allowed, shall be treated as Class 11 unsecured Claims.

33

**D.      Non-Priority Unsecured Claims**

The Debtor has a number of general unsecured pre-petition creditors. Several of the general unsecured creditors have filed Proofs of Claim. The bar date for filing claims against the Debtor was August 16, 2010. The Debtor has compiled a list of the Claims which it scheduled in the bankruptcy case and the Claims filed by creditors in Class 11.

To the extent that a creditor who was scheduled by the Debtor filed a Claim, the amount of the Claim as filed by the creditor is considered in the analysis, unless otherwise noted. The Claims list containing all known unsecured claims in Class 11 is attached to this Disclosure Statement as Exhibit E. Pursuant to the Debtor's Bankruptcy Schedules and the proofs of claim filed by creditors, the maximum total Class 11 claims are approximately $526,844. This figure does not account for any reduction in claim amounts as a result of claim objections that may be filed by the Debtor. This figure also assumes that the Mechanics Lien Claimants are satisfied with the sale of the Project, Filing 1, and holds $0 unsecured deficiency claims against the Debtor, and that the entire secured and unsecured claims of Sunshine is disallowed. This number also assumes that there is no deficiency claim for Pueblo Bank & Trust as a result of its foreclosure of its secured note. The deficiency claim for this creditor could be fairly large.

**DESCRIPTION OF THE PLAN**

SRKO filed its Plan of Reorganization with the United States Bankruptcy Court for the District of Colorado on September 24, 2010. The Plan may be amended prior to confirmation. The Plan provides for the reorganization of SRKO's debts. Funding of the Plan will be derived from the Debtor's ability to obtain financing, complete the Project, 109 Acres, sell the Project, Filing 1, and generate revenue to pay its creditors.

The Plan provides for the specification and treatment of all creditors and Interest holders of SRKO. The Plan identifies whether each Class is impaired or unimpaired. A Class is unimpaired only if the Plan leaves unaltered the legal, equitable or contractual obligations between SRKO and the unimpaired claimants or interest holders. The following is a brief summary of the Plan. The actual text of the Plan should be reviewed for more specific detail.

**Unclassified Priority Claims**

As provided in Section 1123(a)(1) of the Code, the Claims against the Debtor covered in Article IV of the Plan are not classified. The holders of such Allowed Claims are not entitled to vote on the Plan.

1.   **Administrative Claims**

The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Code, Administrative Claims, shall receive cash equal to the allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Such Claims shall be paid in full on the Effective Date of the Plan, or treated as otherwise agreed to by the particular holders of such Claims. Section 507(a)(2) Administrative Claims that are allowed by the Court after the Effective Date of the Plan shall be paid upon allowance. SRKO expects that the following creditors will hold claims which constitute unpaid cost and expense of administration claims as of the Confirmation Date of the Plan estimated as of December 30, 2010.

| Claimant | Nature of Claim | Claim Amount (estimated) |
|---|---|---|
| Kutner Miller Brinen, P.C. | Legal Fees-Bankruptcy Counsel | $50,000 |
| Sweetbaum, Levin and Sands, P.C. | Legal Fees-Special Counsel | $30,000 |
| Nelson | Accountant | $10,000 |
| **Total:** | | **$90,000** |

All administrative expense Claims of professionals are subject to Court approval on notice to creditors with an opportunity for a hearing. Certain professional fees may be paid pursuant to interim fee applications and upon Court allowance. The fees set forth above are the total unpaid fees expected in the case as of the estimated Confirmation Date of the Plan. The amounts set forth above are expected to be due on the Confirmation Date of the Plan and do not include fees and costs paid directly by the Debtor pursuant to Court Order.

The Debtor has paid all other administrative expenses in the ordinary course of business during the course of the bankruptcy case, and therefore does not believe that any other material administrative claims exist against the estate.

35

2.      **Tax Claims**

The Allowed Claims of a type specified in Section 507(a)(8) of the Code, Tax Claims of governmental taxing authorities, shall be paid on the Effective Date of the Plan. The Debtor is unaware of any tax claims. These claims are generally unsecured priority tax claims

3.      **United States Trustee Fees**

The Debtor will make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed. All payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the case is closed, converted, or dismissed. The Debtor's obligation to file post confirmation quarterly reports pursuant to 11 U.S.C. § 1930(a)(7) continues until the Chapter 11 case is dismissed, converted or closed. Since it is expected the case will be closed and a Final Decree entered shortly after the Effective Date, it is not expected that the fees will be a material post-petition obligation. Post-confirmation payments due to the United States Trustee are estimated to be less than $325 per quarter.

**Class 1, Priority Claims**

Allowed Class 1 Priority Claims shall be paid in deferred cash payments of a value, as of the Effective Date of the Plan, equal to the amount of the claims. The claims will be paid within one year with interest accrued on the outstanding balance of the claims at the rate of 5% per annum. The Class 1 claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4), and 507(a)(5) of the Code. The Debtor does not anticipate any Class 1 claimants.

**Class 2, The Allowed Secured Claim of the El Paso County Treasurer**

The Class 2 Secured Claim is unimpaired by this Plan. The Class 2 Claim shall be allowed in its full amount. The statutory rights of Class 2 are unaffected by the Plan.

**Class 3, The Allowed Secured Claim of the Denver County Treasurer**

The Class 3 Secured Claim is unimpaired by this Plan. The Class 3 Claim shall be allowed in its full amount. The statutory rights of Class 3 are unaffected by the Plan. This claim encumbers

36

the condominium units subject to the lien held by Pueblo Bank & Trust who is expected to foreclose on the units.

**Class 4, The Secured Claims Held by Mechanics Lien Claimants Against the Project, Filing 1.**

The Class 4 Secured Claims are impaired under the Plan. The Class 4 claims shall be allowed, on a non-recourse basis, in the full amount due and outstanding as of the Effective Date of the Plan, unless agreed otherwise, or as allowed by the Court or the El Paso County District Court in the Litigation. The allowed claims shall include all principal, accrued interest, fees and charges allowable pursuant to applicable Colorado statutes which form a basis for the Class 4 claims.

Class 4 shall receive the Net Proceeds of the sale of Project, Filing 1. The Net Proceeds shall be distributed to Class 4 in the order of their lien priorities, if any, and on a pro-rata basis among claimants of equal priority in the event there are insufficient Net Proceeds to pay Class 4 in full. In the event that the Project, Filing 1 is sold prior to final determination of the liens and claims of the Mechanics Lien Claimants in the Litigation, the Net Proceeds of the sale of Project, Filing 1 shall be paid by the Debtor into the registry of the El Paso County District Court to be distributed to the Mechanics Lien Claimants in accordance with said Court's determination of the priority and amount of the claims held by the Mechanics Lien Claimants.

**Class 5, The Secured Claims Held by Mechanics Lien Claimants Against the Project, 109 Acres.**

The claims in this class will be paid upon sale or refinancing of the Project, 109 Acres. This sale or refinancing is to occur within five years of the Effective Date of the Plan. Class 5 claims will accrue interest at the Colorado statutory rate until paid.

**Class 6(a and b), The Allowed Secured Claims of Ho, LLC.**

The Class 6(a and b) Allowed Secured claims consist of the allowed claims held by Ho, LLC related to the $1.2 million and $1.3 million notes as described in this Disclosure Statement. The Class 6(a and b) claims are impaired by this Plan. The principal amount of the claims shall be fixed at either: a) the amount of the claim as set forth in the Debtor's Schedules or in a Proof of Claim filed by such claimants; b) an amount agreed upon by the parties; or c) an amount determined by the Court.

The Class 6(a and b) claims will bear interest at the rate of: (i) 5% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 6(a and b) claimant objects to such rate in writing and serves a copy of such objection on the Debtor at least fifteen (15) days prior to the commencement of the confirmation hearing, such rate as will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by Debtor and the Class 6(a and b) claimant. Class 6(a and b) shall accrue interest only commencing on the Effective Date of the Plan. All outstanding principal and interest shall be due in a single balloon payment made without penalty no later than five years following the Effective Date of the Plan.

The lien positions held by the Class 6(a and b) claimant shall be unaltered by the Plan. The Class 6(a and b) claims shall be paid from available Net Proceeds, following the payment of senior secured claims, derived from sale or refinance of Project, 109 Acres that serves as collateral for their liens. The Project, 109 Acres shall be sold or refinanced no later than five years from the Effective Date of the Plan.

**Class 7, The Allowed Secured Claim of Sunshine Home Development, Inc.**

Class 7 consists of the Allowed Secured Claim held by Sunshine Home Development, Inc. ("Sunshine"). Class 7 is impaired and shall not receive anything under the Plan. On the Effective Date of the Plan, the lien held by Class 7 shall be avoided pursuant to 11 U.S.C. §547, the Claim shall be disallowed, and the claim shall no longer constitute a secured or unsecured claim. Sunshine shall either release its Deed of Trust, Reception No. 209147137, within thirty days of the Effective Date of the Plan, or the lien will be avoided. Should Sunshine fail to comply with this paragraph, the Debtor shall initiate litigation in the Court to reverse the transaction as a preference or pursuant to an alternative avoidance action.

**Class 8, The Allowed Secured Claims of Pueblo Bank & Trust.**

Class 8 consists of the Allowed Secured Claim held by Pueblo Bank & Trust. Class 8 is impaired. The Class 8 claimant has already obtained relief from the automatic stay during the course of the Chapter 11 case. The Class 8 claimant may pursue its rights and remedies pursuant to its loan documents including its deeds of trust. Any remaining claim held by the Class 8 claimant shall be

an unsecured Class 11 claim.

**Class 9, The Allowed Secured Claim of N.A. Rieger.**

Class 9 consists of the Allowed Secured Claim held by N.A. Rieger. The Class 9 claim is impaired by this Plan. The principal amount of the Class 9 claim shall be fixed at either: a) the amount of the claim as set forth in the Debtor's Schedules or in a Proof of Claim filed by such claimant; b) an amount agreed upon by the parties; or c) an amount determined by the Court.

The Class 9 claim will bear interest at the rate of: (i) 5% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 9 claimant objects to such rate in writing and serves a copy of such objection on the Debtor at least fifteen (15) days prior to the commencement of the confirmation hearing, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by Debtor and the Class 9 claimant. Class 9 shall accrue interest only commencing on the Effective Date of the Plan. All outstanding principal and interest shall be due in a single balloon payment made without penalty no later than five years following the Effective Date of the Plan. The lien position held by the Class 9 claimant shall be unaltered by the Plan.

**Class 10, The Allowed Secured Claim of Pinnacle Business Finance, Inc.**

Class 10 consists of the Allowed Secured claim held by Pinnacle Business Finance, Inc. and is secured by certain equipment. The Class 10 claimant is impaired and shall be paid in accordance with the Stipulation reached during the course of the Chapter 11 case or alternatively, the collateral for such claim shall be sold and the claim paid with the proceeds of sale.

**Class 11, The Allowed Claimants with General Unsecured Claims**

Class 11 consists of those unsecured creditors of SRKO who hold Allowed Claims. Class 11 is impaired and shall receive a pro-rata distribution of the Net Proceeds which remain from sale or refinance of the Project, 109 Acres within five years of the Effective Date of the Plan, or as otherwise agreed. Class 11 shall not be paid until after all senior secured creditor classes, that exist as of the date of sale or refinance, have been paid in full. Class 11 claimants shall not receive more than payment of their Allowed Claims in full.

**Class 12, The Interests Held by Pre-Confirmation Partners**

Class 12 includes the Interests in SRKO held by the pre-confirmation partners. Class 12 is impaired. On the Effective Date of the Plan all membership interests in SRKO held by Class 12 shall be retained by existing partners, subject to the provisions of the Plan.

**Class 13, The Allowed Secured Claim of the Douglas County Treasurer**

The Class 13 Secured Claim is unimpaired by this Plan. The Class 13 Claim shall be allowed in its full amount. The statutory rights of Class 13 are unaffected by the Plan.

**B.    MEANS FOR EXECUTION OF THE PLAN**

**Post-Confirmation Operations**

SRKO shall be empowered to take such action as may be necessary to perform its obligations under the Plan. On the Effective Date of the Plan, Jannie Richardson shall be appointed as the agent of SRKO pursuant to 11 U.S.C. §1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plan, including but not limited to the preparation, execution, and recording of documents. Ms. Richardson may resign such position at any time. In addition, the Debtor shall select an independent third party real estate professional or accountant to manage and make decisions with respect to the marketing and sale of the Project, Filing 1 property

The Debtor shall be entitled to develop all or part of the Project, 109 Acres property during the course of the five years following the Effective Date of the Plan. The Debtor shall be entitled to borrow money for construction purposes and secure such construction loans or refinance money with the Project, 109 Acres.

**C.    ADMINISTRATIVE CLAIM BAR DATE**

If the Plan is confirmed, all applications for allowance and payment of Administrative Claims, including Professional Fees, must be filed within 45 days following the Confirmation Date.

## PLAN FEASIBILITY

The Plan is feasible as it allows the Debtor to restructure its debt, reorganize the corporation, and repay its creditors with the marketing and sale of the Project, Filing 1, as well as the development, marketing, sale and/or refinancing of the Project, 109 Acres.

Unclassified Priority Claims are defined in the Plan as "Claims pursuant to Section 507(a)(2) which are Administrative Claims allowed under Section 503(b) of the Code and any fees and charges against the estate under Chapter 123 of Title 28 of the United States Code and shall further mean Allowed Unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code." The Unclassified Priority Claims as of the anticipated confirmation date of December 30, 2010 are estimated as follows:

| | |
|---|---|
| Kutner Miller Brinen, P.C. | $50,000.00 |
| Sweetbaum, Levin and Sands, P.C. | $30,000.00 |
| Accountant | $10,000.00 |
| Total | $90,000.00 |

Determining feasibility of the Plan also requires an analysis of the Debtor's ability to pay the funds immediately due on the Plan Confirmation Date, as well as the Debtor's ability to fund the extended payments due for the life of the Plan. The Section 507(a)(2) claims will be paid in full on the Effective Date of the Plan or deferred by agreement. The priority administrative claims due on the Plan Confirmation Date as provided above are estimated at $90,000. Such claims shall be paid in full on the Effective Date of the Plan or treated as otherwise agreed to by the particular holders of such claims.

Upon the Effective Date of the Plan or shortly thereafter, the Debtor shall sign a listing contract for Project, Filing 1. The Project, Filing 1 shall be marketed for a period of no less than four months and no more than six months and then sold in an auction or on a private sale basis as determined by the listing broker and shall be sold free and clear of liens, claims and encumbrances. The manner of sale shall employ the best available method to raise the highest sale price possible within the given listing and sale period. A third party real estate professional shall be employed for the marketing and sale process. The Debtor shall pay all fees and costs necessary to pursue reasonable marketing exposure. Any person or entity shall be entitled to bid to acquire the Project,

Filing 1. No credit bids will be permitted from Mechanics Lien Claimants although such creditors will be permitted to bid with cash. A formal marketing and auction sale proposal will be filed with the Court prior to the Confirmation Hearing.

The Debtor may proceed with the litigation of the claims held by the Mechanics Lien Claimants, although it will not be required to do so. The Debtor contests certain of the claims and believes any disputed amounts will be resolved in the course of the Litigation. The Litigation will be conducted, generally, in connection with the suit pending in the El Paso County District Court and is defined in the Plan as the Litigation.

As required under the Plan, Spring Water Lofts, LLC shall surrender its interest in Colorado Crossing, Lot 1, Filing No. 2 and transfer its interest to the Debtor for no consideration within thirty (30) days of the Effective Date of the Plan. This vacant land is located in the Colorado Crossing Project and is comprised of approximately 6.8 acres. The $2 million promissory note secured by such real property shall be marked "paid in full" and the Debtor shall issue a Note secured by a Deed of Trust in the amount of two hundred fifty thousand dollars ($250,000) to Ho, LLC secured by Lot 1, Filing No. 2 on account of Ho, LLC's pre-petition payment to the Debtor of $250,000 for the purchase of the $2 million note in December 21, 2009. In exchange, Ho, LLC shall release its Deed of Trust against the property within thirty days of the Effective Date of the Plan. Spring Water Lofts, LLC shall issue a warranty deed for Lot 1 in favor of the Debtor within thirty days of the Effective Date of the Plan. Should Ho, LLC or Spring Water Lofts, LLC fail to comply with this paragraph, the Debtor shall initiate litigation in the Court to recover the Lot 1, Filing No. 2 property as a fraudulent conveyance or pursuant to an alternative avoidance action.

The Debtor anticipates that Class 11 will be paid either from the sale, refinancing, or development of the Project, 109 Acres. The Debtor anticipates that Class 11 shall be paid in full from the equity in the real estate. However, a 100% payout, or any specific percentage payment, to Class 11 is not guaranteed and is based on a best-case scenario. The payout to Class 11 may be reduced and diluted if the total Class 11 Allowed Claims increase by the addition of deficiency claims resulting from secured creditors whose claims are under-secured.

The Debtor believes the Plan is feasible and in the best interests of all creditors and parties in interest.

## RISK TO CREDITORS

This Disclosure Statement contains statements which look into the future. There is no way to determine the accuracy of these statements. The Debtor has used its best efforts based upon all the information available to the Debtor in determining its ability to successfully and efficiently collect the Pre-Petition Receivables. The Debtor has attempted to be conservative in its analysis. The Debtor believes that the Plan as proposed offers the best option for creditors. As explained below in greater detail, the principal alternative to the Debtor's reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code. As indicated in the Debtor's liquidation analysis provided below, liquidation of the Debtor will assure a distribution to unsecured creditors less than that proposed by the Plan. Since the Debtor's payments to Class 11 General Unsecured Creditors are based on the success of the Debtor's effort to sell, refinance, or development of the Project, 109 Acres, the Debtor cannot predict the absolute certainty of the level of payment to Class 11.

## EVENT OF DEFAULT

The Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtor and its creditors. In the event of a default by the Debtor under the Plan, creditors shall be entitled to enforce all rights and remedies against the Debtor for breach of contract, the Plan. Any secured creditor claiming a breach of the Plan by the Debtor will be able to enforce all of their rights and remedies including foreclosure of their security agreement, lien, or mortgage pursuant to the terms of such document. The rights and remedies of secured creditors who are unimpaired by the Plan will have their rights and remedies, upon default by the Debtor, determined and governed by the creditor's underlying loan documents and such terms are not altered by the Plan. Any impaired creditor claiming a breach by the Debtor must provide written notice to the Debtor of the claimed default, the notice must provide the Debtor a ten (10) day period within which to cure the claimed default. Upon the Debtor's failure to cure the default within such ten day period, the creditor may proceed to exercise their rights and remedies.

## TAX CONSEQUENCE

The Debtor is not providing tax advice to creditors or interest holders. **U.S. Treasury Regulations require you to be informed that, to the extent this section includes any tax advice, it is not intended or written by the Debtor or its counsel to be used, and cannot be used, for the purpose of avoiding federal tax penalties.** Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation. Generally, unsecured creditors should have no tax liabilities as a result of Plan confirmation. The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year in which case income may have to be recognized. Interest holders may have very complicated tax effects as a result of Plan confirmation.

Pursuant to Section 1146(c) of the Code, the issuance, transfer, or exchange of notes or equity securities under the Plan by the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan or the Agreements shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

## POST-CONFIRMATION MANAGEMENT

### Jannie Richardson

Jannie Richardson is the Manager of Duk, LLC, general partner of the Debtor, and will continue to manage the day to day affairs of the Debtor post confirmation. Ms. Richardson created the vision of the Colorado Crossing Project, and in large part, has undertaken every effort to fulfill completion of the project including financing, planning, and execution of the project. Ms. Richardson has extensive experience in the real estate business, both residential and commercial. Ms. Richardson has owned and operated several types of businesses including an excavation company, residential and commercial real estate companies. Ms. Richardson will manage the Debtor's marketing, sale, development, and/or refinancing of the Project, 109 Acres. Ms. Richardson will also manage the majority of the Debtor's affairs, including all actions necessary under the terms of the Plan, except as provided below regarding the sale of the Project, Filing 1. Ms. Richardson will also manage all business operations of the Debtor, which may include the

44

defense/prosecution of the Litigation.

**Third Party Real Estate or Accounting Professional**

Ms. Richardson shall sign a listing contract shortly after the Effective Date of the Plan for the marketing of the Project, Filing 1. The Debtor shall select an independent third party real estate professional or accountant to manage and make decisions with respect to the marketing and sale of the Project, Filing 1 property. Any creditor who desires to have any input as to the selection of such a professional should contact counsel for the Debtor.

## SUBSTANTIVE EVENTS DURING THE CHAPTER 11 CASE

The events summarized below are not necessarily listed in chronological order as they occurred during the case.

**Motions for Relief From Stay**

### Pueblo Bank and Trust

Pueblo Bank and Trust filed a Motion for Relief From Stay to foreclose on certain real property as follows:

      a.     70 West 6th Avenue, #206 and #207, Denver, Colorado 80203
      b.     Vacant Land A-G, Westfield Trade Center & I-L1, Dawson Ridge Subdivision, Castle Rock, Colorado 80104

The Debtor filed an objection to the motion. The Court granted the bank relief from stay to pursue foreclosure of the real property.

### Debtor's Motion

The Debtor filed a Motion to Provide Mechanics Lien Claimants Relief From the Automatic Stay under 11 U.S.C. 362(a) to for all mechanics lien claimants who have previously asserted mechanics liens to the extent necessary to allow all parties to that certain state court litigation styled *GE Johnson Construction Co. vs. Sunshine Development, Inc. et al,* Case No. 08CV5805, pending before the El Paso District Court. The Court granted the motion and issued an order allowing such claimants relief from stay to continue such litigation with respect to issues relating to the extent, validity, priority, and ranking of mechanics liens encumbering the Colorado Crossing Property as

45

described in the Motion and as asserted in such litigation. The Court also ordered that Concrete Management Corporation (CMC) may also litigate the amount of its liens as well as the extent, validity, priority and ranking of its liens. The Court further ordered that no party shall be entitled to enforce any judgment or lien obtained against the Debtor in the subject lawsuit. The Court also ordered that CMC may pursue its Trust Fund/Breach of Fiduciary Duty Claims against the Debtor SRKO in the litigation State Court Litigation in addition to its lien claims against the Debtor.

The Debtor also defended several motions for relief from the automatic stay with respect to the Mechanics Lien Claimants. The Debtor generally agreed to grant relief from stay as to the liquidation of the claims.

Pinnacle Business Finance

Pinnacle Business Finance filed a motion for relief from stay to pursue actions against certain financed equipment. The Debtor and Pinnacle entered into a stipulation resolving the motion whereby the Debtor agreed to pay monthly payments to Pinnacle in exchange for use of the equipment. The stipulation was approved by the Court.

**Concrete Management Corp. Adversary Proceeding**

CMC filed a Complaint against SRKO, and several other related parties on March 23, 2010 asserting the same claims as alleged in CMC's counterclaims in the GE Johnson Foreclosure Action, including the partial judgment order. SRKO filed an Answer and Counterclaims on April 26, 2010. SRKO specifically asserted that the partial judgment order was not final so that SRKO can dispute CMC's entire claim. SRKO also reasserted its breach of contract and excessive lien counterclaims. The lawsuit is pending.

**Motion to Appoint Trustee**

GE Johnson Construction Company and Stresscon Corporation filed a motion to appoint a trustee in the case. The Court set a final evidentiary hearing on the Motion and the Debtor's objection on October 28, 2010.

**Spring Water Development, LLC**

Spring Water Development, LLC was created on June 1, 2010. There are 4 members to this entity and they are as follows: (1) Paul Ko; (2) Jessica Stinson; (3) Jeffrey Stinson; and (4) Allen Richardson. This entity was created to provide services in the areas of construction, repair and maintenance, landscaping, and other construction related matters. Spring Water Development, LLC works on projects outside of the Debtor's scope of work, however Spring Water Development, LLC has performed repair and maintenance work on the Colorado Crossing property without compensation. Post confirmation, the Debtor intends to employ Spring Water Development, LLC to complete the necessary winterization and construction to the extent the Debtor is ready to move forward with construction.

## LIQUIDATION ANALYSIS UNDER CHAPTER 7

The principal alternative to the Debtor's reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code. Chapter 7 requires the liquidation of the Debtor's assets by a Trustee who is appointed by the United States Trustee's office. In a Chapter 7 case, the Debtor would cease all business operations and the Chapter 7 Trustee would take over control of the assets. The assets would be liquidated and the proceeds distributed to creditors in the order of their priorities.

Under a Chapter 7 liquidation, secured creditors would likely obtain relief from the automatic stay and foreclose their security interests in the Debtor's property. The liquidation value of the Debtor's assets will likely be significantly lower that its market value as a going concern. The deficiency on any secured claim will be added to the Class 11 General Unsecured Creditor class.

The Debtor has prepared a detailed Liquidation Analysis attached hereto as Exhibit F demonstrating the net value of the Debtor's assets in a liquidation scenario. The Debtor's main assets are its real estate holdings. Upon conversion to Chapter 7, the secured creditors, including the Mechanics Lien Holders will likely obtain relief from stay and foreclose on their collateral. If the value of the collateral is less than the corresponding secured claims, any remaining deficiency on these secured claims may be added to the pool of general unsecured claims. The only significant asset available to unsecured creditors is the real property, with the exception of the Project, Filing 1.

In a Chapter 7 case, the Mechanics Lien Claimants with liens encumbering Project, Filing 1 would not have recourse to the estate or the Debtor and would only have recourse to Project, Filing 1 as they have under the Plan.

As demonstrated in the Liquidation Analysis, even if funds would be available for distribution to unsecured creditors in a liquidation scenario, the Plan provides all parties with an organized and timely resolution of their claims. See Liquidation Analysis. The Chapter 7 Trustee's fees and any additional costs and expenses of the Chapter 7 estate would have to be paid as priority expenses before any unsecured creditor claims may be paid. These would likely include any attorneys retained by the trustee as well as any accountant required to prepare final tax returns.

As demonstrated, the Debtor believes that Class 11 unsecured creditors will receive a greater distribution under the terms of the Chapter 11 Plan as opposed to a Chapter 7 liquidation. Based on the Debtor's Liquidation Analysis, there would be little or no funds to distribute to unsecured creditors in a Chapter 7 case.

Given the alternative under a Chapter 7 scenario, the Debtor's proposed Chapter 11 Plan provides a substantially better alternative for unsecured creditors, and contemplates a distribution to unsecured creditors from the net proceeds of the Pre-Petition Receivables. It is therefore urged by the Debtor that all creditors vote in favor of the Plan.

DATED: September 28, 2010.

**THE SRKO FAMILY LIMITED PARTNERSHIP**

By:   **DUK, LLC, General Partner**

By: _____

Jannie Richardson, Manager

Kutner Miller Brinen, P.C. ("KMB") has acted as legal counsel to The SRKO Family Limited Partnership on bankruptcy matters during the Chapter 11 case. KMB has prepared this Disclosure Statement with information provided primarily by The SRKO Family Limited Partnership. The information contained herein has been approved by The SRKO Family Limited

48

Partnership.  KMB has not made any separate independent investigation as to the veracity or accuracy of the statements contained herein.

**Counsel to The SRKO Family Limited Partnership Debtor-In-Possession:**

KUTNER MILLER BRINEN, P.C.

By:   /s/ Lee M. Kutner
        Lee M. Kutner (#10966)
        303 East 17th Avenue, Suite 500
        Denver, CO 80203
        Telephone: (303) 832-2400
        Telecopier: (303) 832-1510
        lmk@kutnerlaw.com



ROBERT C. "BOB" BALINK   El Paso County, co
11/20/2009  00:12:11 AM
Doc  $0.00        Page
Rec  $6.00        1 of 1
209134199

## QUIT CLAIM DEED

THIS DEED, Made this  19TH   day of   NOVEMBER, 2009.
between   JANNIE H. RICHARDSON

of the                                    and State of   COLORADO
of the first part, and   THE SRKO FAMILY LIMITED PARTNERSHIP, A
                         COLORADO LIMITED PARTNERSHIP

whose legal address is   9475 BRIAR VILLAGE POINT, SUITE 300,
                         COLORADO SPRINGS, CO  80920

of the                                    and State of   COLORADO          , of the second part:

WITNESSETH, That the said party of the first part, for and in consideration of the sum of

ONE DOLLAR AND OTHER GOOD AND VALUABLE CONSIDERATION  DOLLARS, (                   ),
to the said party of the first part in hand paid by the said parties of the second part, the receipt whereof is hereby confessed and
acknowledged, has remised, released, sold, and QUIT CLAIMED, and by these presents does remise, release, sell, and
QUIT CLAIM unto the said parties of the second part, not in tenancy in common but in joint tenancy, the survivor of them,
their assigns and the heirs and assigns of such survivor forever, all the right, title, interest, claim and demand which
the said party of the first part has in and to the following described lot(s) or parcel(s) of land, situate, lying and being in the
, and State of Colorado, to wit:

        LOTS 1, 2, 3, 4, AND 5; AND TRACT A,
        COLORADO CROSSING FILING NO. 2, IN THE CITY OF COLORADO SPRINGS,
        COUNTY OF EL PASO,
        STATE OF COLORADO

        THIS DEED IS INTENDED TO CONVEY ANY INTEREST THAT THE GRANTOR MAY HAVE IN
        THE ABOVE PROPERTY BY VITURE OF THAT DEED RECORDED JUNE 7, 2006 AT
        RECEPTION NO. 206084136 OF SAID EL PASO COUNTY RECORDS

also known by street and number as

TO HAVE AND TO HOLD the same, together with all and singular the appurtenances and privileges thereunto belonging, or
in anywise thereunto appertaining, and all the estate, right, title, interest, and claim whatsoever, of the said party of the first part,
either in law or equity, unto said parties of the second part, the survivor of them, their assigns, and the heirs and assigns of such
survivor forever.
    The singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.
    IN WITNESS WHEREOF, the said party of the first part has hereunto set his hand and seal the day and year first above written.

Signed, Sealed and Delivered in the Presence of

_____        _____
    JANNIE H. RICHARDSON


STATE OF   COLORADO            }
                              } ss.
COUNTY OF  EL PASO            }
The foregoing instrument was acknowledged before me this  19TH   day of  NOVEMBER, 2009 .

        JANNIE H. RICHARDSON


My Commission expires:  9-14-2013            Witness my hand and official seal.

                                             _____
                                                     Notary Public

PAUL T. KO
NOTARY
PUBLIC
STATE OF COLORADO

QUIT CLAIM DEED - to Joint Tenants (QTCLMJT)

# EXHIBIT A

# COLORADO CROSSING FILING NO. 2

A REPLAT OF A PORTION OF LOT 1, FAIRLANE TECHNOLOGY PARK FILING NO. 1 AND A PORTION OF TRACT A, COLORADO CROSSING FILING NO. 1 BEING LOCATED IN A PORTION OF THE SOUTHEAST QUARTER OF SECTION 20 AND A PORTION OF THE SOUTHWEST QUARTER OF SECTION 21, TOWNSHIP 12 SOUTH, RANGE 66 WEST OF THE 6TH P.M., CITY OF COLORADO SPRINGS, EL PASO COUNTY, COLORADO

VICINITY MAP

LEGEND

1" = 600'   Scale in Feet

1" = 200'   Scale in Feet

Return to:

5540 N. Academy Blvd Ste 100
Colorado Springs, CO 80918
ATN: SRKO, FLP

ROBERT C. "BOB" BALINK     El Paso County, CO
12/31/2009   12:3[illegible]
Doc $0.00        Page
Rec $16.00     1 of 3

209149448

## QUIT CLAIM DEED

Date:        Effective December 29th, 2009

Grantor:    SRKO, FAMILY LIMITED PARTNERSHIP, a Colorado Limited Partnership

Grantor's Mailing Address:     5540 N. Academy Blvd., Suite 100
                               Colorado Springs, Colorado 80918

Grantee:    JANNIE H. RICHARDSON, an individual

Grantee's Mailing Address:     5540 N. Academy Blvd., Suite 100
                               Colorado Springs, Colorado 80918

Consideration:

    In and for the sum of ONE AND NO/100 DOLLARS ($1.00), and other good and valuable
    consideration, the receipt of which is hereby acknowledged.

Property (including any improvements):
SEE ATTACHED EXHIBIT "A" AND "B"

    Grantor, for the consideration, and subject to any reservations from and exceptions
to conveyance, does hereby remise, release and forever quitclaim to Grantee, all right, title and interest
in and to the Property, together with all the tenements and appurtenances thereunto belonging, and the
reversions, remainders, rents, issues, and profits thereof, if any, to have and to hold the same unto the
Grantee and Grantee's heirs, executors, administrators, successors, or assigns forever.

    IT IS EXPRESSLY UNDERSTOOD AND AGREED between Grantor and Grantee that Grantor
makes no representation, covenants or warranty of any kind whatsoever.  By this instrument, the parties
intend that Grantor release to Grantee whatever interest Grantor may have in the Property.

                              SRKO, FAMILY LIMITED PARTNERSHIP.
                              a Colorado Limited Partnership

                              By: _____

                                  JANNIE RICHARDSON, Manager

**THE STATE OF COLORADO**

**COUNTY OF EL PASO**

    This instrument was acknowledged before me this 29th day of December, 2009, by Jannie
Richardson, Manager of SRKO, Family Limited Partnership., a Colorado Limited Partnership, on behalf
of such company, and is personally known to me.

                              _____
                              Notary Public, State of Colorado
                              My Commission Expires:   9-14-2013

PAUL T. KO
NOTARY
PUBLIC
STATE OF COLORADO
My Commission Expires 9/14/2013

**EXHIBIT B**

# EXHIBIT "A"

That portion of Lot 1, Fairlane Technology Park Filing No. 1 in the City of Colorado Springs, El Paso County, Colorado as recorded at Plat Book E-5 at Page 216 of the records of said El Paso County, located in a portion of the Southwest quarter of Section 21, Township 12 South, Range 66 West of the 6th P.M., being more particularly described as follows:

(Basis of Bearing herein based on the Northeasterly Right-of-Way line of Democracy Point Tract A, Colorado Crossing Filing No. 1 as recorded at Reception No. 208712766 and Tract A, Colorado Crossing Filing No. 2 as recorded at Reception No. 208712825 of the records of El Paso County, assumed to bear N40°56'10"W a distance of 1273.27 feet as shown in Exhibit "B")

BEGINNING at the Eastern most corner of Tract B at the intersection of Creek Bed Point and Interquest Parkway as shown in Colorado Crossing Filing No. 1 as recorded at Reception No. 208712766 of the records of El Paso County, said point being on the North line of Lot 1, Fairlane Technology Park Filing No. 1 as recorded in Plat Book E-5 at Page 216 of the records of said El Paso County; thence: following ten (10) courses are on the Northerly and Easterly line of said Lot 1; thence: 1) S89°03'39"E ,a distance of 879.08 feet; 2) S86°40'30"E a distance of 180.16 feet; 3) S89°03'39"E a distance of 250.00 feet to a point of curve; 4) on said curve to the right having a central angle of 90°09'46", a radius of 19.00 feet for an arc distance of 29.90 feet; 5) S01°06'07"W a distance of 131.53 feet to a point of curve; 6) on said curve to the left having a central angle of 31°00'00", a radius of 932.00 feet for an arc distance of 504.26 feet; 7) S29°53'53"E a distance of 80.13 feet to a point of curve; 8) on said curve to the right having a central angle of 41°59'14", a radius of 317.48 feet for an arc distance of 232.65 feet; 9) S12°05'21"E a distance of 231.15 feet to a point of curve; 10) on said curve to the right having a central angle of 08°30'04", a radius of 1468.00 feet for an arc distance of 217.81 feet to a point on the Northerly line of Tract C, Colorado Crossing Filing No. 2 as recorded at Reception No. 208712825 of the records of said El Paso County, the following five (5) courses are on the Northerly and Easterly line of said Filing No. 2; thence: 1) S27°08'16"W a distance of 52.25 feet to a point on a curve; 2) Southwesterly on said curve to the right having a central angle of 06°42'22", a radius of 1463.00 feet for an arc distance of 171.23 feet, whose chord bears S25°58'41"W; 3) N59°00'26"W a distance of 473.16 feet to a point of curve; 4) on said curve to the right having a central angle of 18°04'16", a radius of 210.00 feet for an arc distance of 66.23 feet; 5) N40°56'10"W and its Northwesterly extension on said Filing No. 1, a distance of 1273.27 feet to a point of curve on the Easterly line of said Filing No. 1; the following three (3) courses are on said Easterly line; thence: 1) on said curve to the left having a central angle of 19°54'54", a radius of 240.00 feet for an arc distance of 83.42 feet; 2) N00°26'10"W a distance of 250.68 feet; 3) N45°15'05"E a distance of 57.92 feet to the POINT OF BEGINNING and containing 34.783 acres of land, more or less.

(See Exhibit "B" attached)

JOB NO. 04-087

FILE: 04087EXBC.DWG
DATE: 11/20/09

**ROCKWELL CONSULTING, inc.**

ENGINEERING · SURVEYING
1955 N. UNION BLVD., SUITE 200
COLORADO SPRINGS, CO 80909
(719) 475-2575 · FAX (719) 475-8223

COLORADO CROSSING - LAND USE "PARCEL B&C"



EXHIBIT "B"

1" = 200'

0  50 100  200                    400

Scale in Feet

LOT 1
FAIRLANE TECHNOLOGY
PARK FILING NO. 1
BOOK E-5, PAGE 218

1,515,131 SF
34.783 ACRES

LOT 1
FAIRLANE TECHNOLOGY
PARK FILING NO. 1
BOOK E-5, PAGE 218

FEDERAL DRIVE
FEDERAL/REPUBLIC FILING NO. 1
RECEPTION NO. 208712728

FEDERAL DRIVE
FAIRLANE TECHNOLOGY PARK FILING NO. 1
PLAT BOOK E-5, PAGE 218

FEDERAL DRIVE

LOCATED IN A PORTION OF THE SW1/4
OF SECTION 21, TOWNSHIP 12 SOUTH,
RANGE 66 WEST OF THE 6th P.M.,
CITY OF COLORADO SPRINGS,
EL PASO COUNTY, COLORADO

COLORADO CROSSING - LAND USE "PARCEL B&C"

JOB NO. 04-087

FILE: 04087EXBC.DWG
DATE: 11/20/08

ROCKWELL
CONSULTING, Inc.

ENGINEERING - SURVEYING
1015 N. UNION BLVD., SUITE 200
COLORADO SPRINGS, CO 80909
(719) 475-2573 - FAX (719) 475-1233



COLORADO CROSSING FILING NO. 1

REPLAT OF A PORTION OF LOT 1, FAIRLANE TECHNOLOGY PARK FILING NO. 1, A SUBDIVISION OF A PORTION OF THE SOUTHEAST QUARTER OF SECTION 20 AND SOUTHWEST QUARTER SECTION 21, TOWNSHIP 12 SOUTH, RANGE 66 WEST OF THE 6TH P.M., CITY OF COLORADO SPRINGS, EL PASO COUNTY, COLORADO

**EXHIBIT C**

# PROPERTY ANALYSIS

## LAND DESCRIPTION AND ANALYSIS

The subject property 109.00 gross acres and is part of a larger mixed-use commercial project known as Colorado Crossing, which is shown in the plan at the end of this section. The Colorado Crossing project is located on a 153 acre parcel of land that will be about 146 acres net of streets when completed. Colorado Crossing has been divided into 6 separate development parcels by the owner. At present, two streets have been constructed on the site, and according to the developer, all streets will be private and maintained by a Home Owner's Association when the project is completed. It is assumed the Developer will construct all infrastructure improvements including streets and utilities (water, sewer, storm, electric, etc.). Each of these development parcels is described below.

**Parcel "A"** is a 13.900 net acre site that is situated at the southeast corner of Interquest Parkway and Voyager Parkway. The land uses proposed for Parcel "A" are about 100,000 square feet of office and retail. The FAR for this parcel is 0.17:1. At present, the site is raw land, except that a monument sign for the Colorado Crossing development has been constructed at the corner of Interquest parkway and Voyager Parkway. Access to the site is from Democracy Point and Creek Bed Point. Parcel "A" is part of the subject being appraised.

**Parcel "B-C"** is a 36.900 net acre site that is situated at the northwest corner of Interquest Parkway and Federal Drive. The client has not provided the appraisers with a survey and legal description of Parcel "B-C", and we have assumed the acreage identified on the development plan is the correct net acreage. The land uses proposed in this Hospitality & Entertainment District includes a 1,000 room hotel & convention center and a water park. At present, the site is raw land. Access to the site is from Creek Bed Point and an undeveloped street linking with Federal Drive. At the request of the Client, Parcel "B-C" is **NOT** par to the subject being appraised.

**Parcel "D"** is a 38.700 net acre site that is situated along Federal Drive at the south and east side of the project. Primary access will be from Federal Drive, but the access curb cuts have not been constructed. This parcel is considered a residential district and approximately 990 multi-family residential units are proposed. The density is 26 units per acre. Parcel "D" is part of the subject being appraised.

**Parcel "E"** is two parcels totaling 29.4 acres. **Phase I, Filing #1** is a 9.766 net acre commercial parcel that is approved for 355,408 square feet but is currently being developed with a 185,911 square foot mixed-use buildings including retail, office and theater uses. A three level parking structure has been constructed which serves 1,059 vehicles. Phase I, Filing #1 parcel is **NOT** part of the subject being appraised. **Phase I, Filing #2** is an 19.63 net acre parcel that will include both retail and multi-family residential land uses. This parcel has approval in the PUD for 610 multi-family units, which is a density of 31 units per acre. At present, Phase I, Filing #2 is raw land. Access to the site is from Democracy Point, Creek Bed Point and other undeveloped streets. At the request of the Client, Phase I, Filing #2 is **NOT** part of the subject being appraised.



**Parcel "F"** is a 12.754 net acre site that is situated at the east side of Voyager Parkway, and south of Parcel "A". The land uses proposed for Parcel "F" are about 392,000 square feet of commercial land uses which could include office, retail and hotel. The FAR for this parcel is 0.71:1. At present, the site is raw land. Access to the site is from Democracy Point. Parcel "F" is part of the subject being appraised

**Parcel "G-H"** is a 14.583 net acre site that is situated at the northwest corner of Voyager Parkway and Federal Drive. The land uses proposed for Parcel "G-H" are about 240,000 square feet of commercial office and retail, and possibly a church. The FAR for this parcel is 0.38:1. At present, the site is raw land. Access to the site will be from Voyager Parkway and Federal Drive, but the access drives have not been constructed. Parcel "G-H" is part of the subject being appraised

## LAND AREA

The following table summarizes the subject's land area.

| COLORADO CROSSING DEVELOPMENT PARCELS | | |
|---|---|---|
| **Parcel Number** | **Acres** | **Sq. Ft.** |
| A | 13.90 | 605,484 |
| D | 38.70 | 1,685,772 |
| F | 12.75 | 555,564 |
| G-H | 14.58 | 635,235 |
| | **79.94** | **3,482,055** |
| | **Total** | **Total** |

## SHAPE AND DIMENSIONS

The site is irregular in shape, with dimensions of approximately 2,291 feet in width and 2,301 feet in depth. Site utility based on shape and dimensions is average.

## TOPOGRAPHY

The site is generally level and at street grade. The topography does not result in any particular development limitations.

## DRAINAGE

No particular drainage problems were observed or disclosed at the time of field inspection. This appraisal assumes that surface water collection, both on-site and in public streets adjacent to the subject, is adequate.

## FLOOD HAZARD STATUS

The following table provides flood hazard information.





Exhibit E

# The SKRO Family Limited Partnership
## Class 11 General Unsecured Creditors

The Claim amounts listed below were
pulled from the Debtor's Bankruptcy
Schedules or from proofs of claim filed
by creditors, and the Debtor does not
waive any rights to object to any of these
claim amounts.

| Creditor | Claim | Proof of claim No. | Revised Claim | Notes |
|---|---|---|---|---|
| Beck Group | $5,619.29 | | $5,619.29 | |
| Berenbaum, Weinsheink, P.C. | $2,582.50 | | $2,582.50 | |
| Business Card | $119,777.59 | | $119,777.59 | |
| Chief Petroleum Co. | $2,375.47 | | $2,375.47 | |
| Cornella Brothers, Inc. | $12,000.00 | | $12,000.00 | |
| First Bank Card | $78,387.51 | 2 | $78,387.51 | |
| Hanes & Schutz | $6,781.03 | | $6,781.03 | |
| Hatch Jacobs, LLC | $36,061.41 | | $36,061.41 | |
| International Council of Shopping Centers | | 3 | $3,676.25 | |
| Interquest Owners Association | $18,448.76 | 45 | $3,336.70 | |
| IPFS Corporation dba Imperial Credit Corp. | | 32 | $17,873.61 | |
| Kansas Door | $128,991.70 | | $128,991.70 | |
| Lewis, Rice, Fingersh, LLC | $785.00 | | $785.00 | |
| Mechone, Inc. | $129,762.00 | 51 | $116,846.00 | 2 |
| Nelson & Co. | $6,030.36 | | $6,030.36 | |
| Sunshine Home Development, Inc. | $20,993,077.34 | 55 | $0.00 | 1 |
| Wood & Ramirez, P.C. | $5,791.10 | 14 | $7,269.35 | |
| | | | | |
| **Total** | **$21,546,471.06** | | **$548,393.77** | |
| | | | | |
| Notes: | | | | |
| | | | | |
| 1. This claim is treated as $0 under the Plan. | | | | |
| 2. The Mechone claim includes an unsecured claim in the amount of $116,846, and a secured claim in the amount of $129,762 as a mechanics lien secured buy Project, Filing 1. | | | | |
| 3. This list does not include additional claims raised in the Litigation, such as the unjust enrichment claims alleged by GE Johnson and Concrete Management Corp. | | | | |

Exhibit F

## The SRKO Family Limited Partnership
### Chapter 11 Bankruptcy Case No. 10-13186 SBB
### LIQUIDATION ANALYSIS

**ASSETS**
**(As of August 31, 2010)**

| | Estimated value | Costs | Net Value |
|---|---|---|---|
| **Real Estate** | | | |
| Project, Filing 1 | $10,000,000.00 | | |
| Less real estate taxes | | $431,220.00 | |
| Less estimated costs of sale | | $800,000.00 | |
| Less mechanics liens | | $19,527,259.00 | |
| Remaining equity | | | $0.00 |
| | | | |
| Project, 109 Acres | $7,337,000.00 | | |
| Less real estate taxes | | $309,371.00 | |
| Less estimated costs of sale | | $586,960.00 | |
| Less mechanics liens | | $163,366.00 | |
| ($84K of this is included in the Filing 1 mechanics liens) | | | |
| Less Ho, LLC liens | | $2,500,000.00 | |
| Less Spring Water Lofts DOT | | $2,000,000.00 | |
| (subject to avoidance in Chapter 11 plan) | | | |
| Less Sunshine Home Development, Inc. DOT | | $11,000,000.00 | |
| (subject to avoidance in Chapter 11 plan) | | | |
| Remaining equity | | | $0.00 |
| | | | |
| Dawson Ridge, Castle Rock | $5,280,000.00 | | |
| (vacant 384.42 acres) | | | |
| Less estimated costs of sale | | $422,400.00 | |
| Less Pueblo Bank and Trust DOT | | $8,619,318.00 | |
| Remaining equity | | | $0.00 |
| | | | |
| Dawson Ridge, Castle Rock, Parcel H | $999,000.00 | | |
| Less estimated costs of sale | | $79,920.00 | |
| Less N.A. Rieger DOT | | $1,500,000.00 | |
| Remaining equity | | | $0.00 |
| | | | |
| Twin Oaks, Castle Rock | $567,600.00 | | |
| Less estimated costs of sale | | $45,408.00 | |
| Less real estate taxes (unknown) | | | |
| Remaining equity | | | $522,192.00 |
| | | | |
| 70 West 6th Avenue, Units 206&207 | $237,600.00 | | |
| Less real estate taxes | | $6,696.10 | |
| Less estimated costs of sale | | $19,008.00 | |
| Less Pueblo Bank and Trust DOT | | $243,280.00 | |
| Remaining equity | | | $0.00 |
| | | | |
| **Total Real Property** | | | **$522,192.00** |

Exhibit F

**The SRKO Family Limited Partnership**
**Chapter 11 Bankruptcy Case No. 10-13186 SBB**
**LIQUIDATION ANALYSIS**

**Personal Property**

| | | | |
|---|---|---|---|
| Bank Account | $36,789.00 | $0.00 | $36,789.00 |
| 23% Interest in Noah, LLC | $0.00 | $0.00 | $0.00 |
| 100% Interest in JRKO, LLC | $0.00 | $0.00 | $0.00 |
| 100% Interest in JR Movie, LLC | $0.00 | $0.00 | $0.00 |
| 100% Interest in Jessica, LLC | $0.00 | $0.00 | $0.00 |
| Misc. personal property | unknown | $0.00 | unknown |
| Machinery, Fixtures, Equipment and Supplies | $81,000.00 | $8,100.00 | |
| Less Pinnacle lien | | $158,905.00 | $0.00 |
| **Total Personal Property** | | **$167,005.00** | **$36,789.00** |

Note: All real property has been discounted as estimated liquidation values.
Note: All machinery and equipment have been disounted 50% as a liquidation value.

**LIABILITIES**

Costs of Administration (estimated)

| | |
|---|---|
| Chapter 7 - Expenses | $2,000.00 |
| Trustee fees | $12,000.00 |
| Accountants fees | $5,000.00 |
| Attorneys fees | $15,000.00 |
| **Total:** | **$34,000.00** |

Chapter 11 - Expenses (estimated)
Attorneys fees and other professionals

| | |
|---|---|
| Kutner Miller Brinen, P.C. | $50,000.00 |
| Sweetbaum Levin & Sands | $30,000.00 |
| Nelson & Co. | $10,000.00 |
| U.S. Trustee | $325.00 |
| **Total** | **$90,325.00** |

| | |
|---|---|
| **Total Administrative Claims** | **$124,325.00** |

| | |
|---|---|
| **Estimated funds available to General Unsecured Creditors** | **$434,656.00** |

Exhibit G

# The SKRO Family Limited Partnership

## Mechanics Lien Claimants
### Claims Against the Project, Filing 1

**The Claim Amounts listed below
were pulled from the Debtor's
Bankruptcy Schedules or from
proofs of claim filed by creditors,
and the Debtor does not waive any
rights to object to any of these claim
amounts**

| Creditor | Claim | Proof of Claim No. | Revised Claim | Notes |
|---|---|---|---|---|
| 3D Web Media | $9,890.00 | | $9,890.00 | |
| ABC Supply Co. | $721.41 | | $721.41 | |
| Banner | $55,607.11 | | $55,607.11 | |
| Barton | 123,582.20 | 47 | $157,106.51 | |
| Belverdere Holdings, Inc d/b/a C&C Sand and Stone | $153,824.61 | 35 | $151,098.54 | |
| Bible Electric | $690,121.00 | 30 | $690,121.00 | |
| Blueprints Inc. | $2,620.00 | | $2,620.00 | |
| Brickstone | $146,668.32 | | $146,668.32 | |
| Carlson Systems, Inc | $1,309.70 | | $1,309.70 | |
| Colorado Doorways | $56,556.89 | 27 | $56,556.89 | |
| Colorado Machinery | $2,557.10 | | $2,557.10 | |
| Concepts | $9,609.60 | | $9,609.60 | |
| Concrete Management | $2,768,682.05 | 18 | $8,521,681.08 | |
| Consolidated Electrical Dist. | $26,356.00 | | $26,356.00 | |
| CPS Distributors | $26,356.00 | | $26,356.00 | |
| CSV/Volvo Rents | $33,775.47 | | $33,775.47 | |
| Douglas Colony Group, Inc f/k/a Earl F. Douglass Roofing Co. | $382,509.65 | 21 | $447,755.05 | |
| Drake Williams | $2,135,581.51 | 43 | $2,583,130.41 | |
| E Light | $498,995.86 | 52 | $571,883.48 | |
| Eddie Bishop | $53,500.00 | | $53,500.00 | |
| Entech Engineering | $136,008.25 | 39 | $163,742.14 | |
| ESD, Inc. | $163,835.67 | | $0.00 | 6 |
| Firebaugh Precast | $2,490.61 | | $2,490.61 | |
| Front Range Redi-Rock | $91,553.55 | | $91,553.55 | |
| Gardner Signs | $39,813.48 | | $39,813.48 | |
| GE Johnson | $8,400,000.00 | 33 | $9,504,918.59 | |
| General Ceiling | $488,787.37 | 37 | $536,272.35 | |
| Glover Masonry | $482,559.12 | | $482,559.12 | |
| Grace Sealants | $33,408.52 | | $33,408.52 | |
| Grainger | $4,123.38 | 9 | $4,099.94 | |
| Gypsum Products | $10,899.82 | | $10,899.82 | |
| HD Supply Construction Supply | | 26 | $24,384.58 | |
| H&E Equipment | $46,392.75 | 24 | $41,256.69 | |

Exhibit G

| Creditor | Claim | Proof of Claim No. | Revised Claim | Notes |
|---|---|---|---|---|
| | | | | |
| Harding Nursery | $45,160.55 | 49 | $46,245.26 | |
| Herblan Insulation | $42,855.00 | | $42,855.00 | |
| Hill Investment Corporation f/k/a Big Horn Plaster | | 48 | $157,922.24 | |
| Honeywell Inc. f/k/a Novar | $17,599.46 | | $17,599.46 | |
| Horizon Glass | $244,943.76 | 46 | $237,237.21 | |
| Interstate Mechanical | $70,000.00 | | $70,000.00 | |
| JC Jones | $78,138.45 | 25 | $78,138.45 | |
| Ken Caryl Glass | $33,750.00 | 20/7 | $35,920.00 | |
| KWAL Paint | $154,708.79 | 58 | $154,637.58 | |
| LaFarge | $455,374.95 | 34 | $490,686.10 | |
| LPR Construction | $240,838.04 | | $240,838.04 | |
| LSC Transportation | $14,246.45 | | $14,246.45 | |
| MechOne Inc | $129,762.00 | 51 | $267,597.09 | |
| Midwest Barricade | $1,605.63 | | $1,605.63 | |
| NES Inc | $75,784.14 | 38 | $180,250.44 | |
| Obermayer Rebmann | $3,855.00 | | $3,855.00 | |
| Olson Plumbing | $1,121,918.64 | 53 | $1,335,157.54 | |
| Onsite Lighting and Survey, LLC | $33,642.69 | | $33,642.69 | |
| Otis Elevator | $120,831.00 | 16 | $95,735.66 | |
| Overhead Door | $11,236.18 | | $11,236.18 | |
| OZ Architects | $404,937.16 | 36 | $503,897.14 | |
| Pacific Coast Supply | $23,884.05 | 5 | $26,153.36 | |
| Parker Steel | $25,075 | | $25,075.00 | |
| Penton Media | $4,036.00 | | $4,036.00 | |
| Perkey Steel | $278,378.00 | 41 | $294,888.04 | |
| Pikes Peak Steel | $5,825.06 | | $5,825.06 | |
| Plymouth Park Tax Services | | 13/12 | $2,392.55 | 5 |
| Powers Thermal Insulation | $82,079.12 | | $82,079.12 | |
| R&R Engineers | $1,802.50 | 4 | $1,802.50 | |
| Rampart Supply | $6,365.71 | | $6,365.71 | |
| Regency Lighting | $16,380.30 | | $16,380.30 | |
| Rial Heating and Air Conditioning | $219,968.90 | | $219,968.90 | |
| Rio Grande | $980,671.55 | 50 | $1,230,846.52 | 4 |
| RK Mechanical | $250,437.55 | 31 | $250,437.55 | |
| Rockwell Consulting | $83,735.00 | 40 | $92,891.71 | |
| Rolling Plains | $61,474.39 | 54 | $81,315.07 | |
| Schuman Comm. | $70,722.44 | 15 | $86,989.69 | |
| Shears-Adkins Architects | | 56 | $67,703.21 | |
| Sherman & Howard, LLC | $2,622.50 | | $2,622.50 | |
| Sherwin Williams | $1,043.14 | | $1,043.14 | |
| Simplex Grinnell | $201,645.98 | 19/8 | $229,102.69 | |
| Smelker Concrete | $1,500.00 | | $1,500.00 | |
| Stresscon | $1,859,886.00 | 23 | $2,120,038.12 | |
| Sunshine Home Development | | 55 | $0.00 | 1 |
| Superior Roofing | $18,465.43 | | $18,465.43 | |
| Superior Steel | $15,762.50 | 22 | $18,651.56 | |
| Taylor Fence | $7,649.00 | | $7,649.00 | |
| Thyssen Krupp | $125,575.95 | | $125,575.95 | |
| Top Quality Drilling | $16,831.07 | | $16,831.07 | |

Exhibit G

| Creditor | Claim | Proof of Claim No. | Revised Claim | Notes |
|---|---|---|---|---|
| | | | | |
| Transit Mix Concrete | | 28 | $1,268,618.61 | |
| Tropwen Enterprises | | 59 | $1,803,795.04 | |
| US Metals, LLC | $7,475.00 | | $7,475.00 | |
| Whitecap | $24,007.00 | | $24,007.00 | |
| Windsor Concrete | | 42 | $248,098.97 | |
| | | | | |
| Total | $24,741,702.03 | | $36,891,630.59 | |

**Notes**
1. The Sunshine Home Development, Inc. mechanics lien was denied in El Paso County District Court.
This creditor filed a mechanics lien claim in the amount of $31 million.
2. The subcontractors claims are duplicative of claims filed by GE Johnsn and Concrete Management
Corp.  See the Disclosure Statement for more detail.
3.  The Debtor disputes a significant portion of the GE Johnson and Concrete Mgt. Corp. claims.
4. Approximately $78,398 of this claim encumbers Lots 1, 2, 3, 4 and 5, and Tract A, Colorado Crossing Filing No.2.
5. The Plymouth Park lien appears to be alleged against the condominiums in Denver, Colorad, and not
the Debtor's real estate in El Paso County, Colorado.
6. The Debtor believes the ESD claim is $0.

## DISPUTES

| Contractor | Disputed Amount | Reason For Dispute |
|---|---|---|
| Banner Rebar | $ 5,000.00 | Vertex estimates the value to furnish the remaining welded wire mesh at Building 2-B. |
| Big Horn Plastering | $ 78,294.00 | Contractor claims materials are stored on site, but no documentation nor Bill of Sale |
| Concepts in Millwork | $ 9,609.60 | Claim consists of "management" and "overhead/profit" fees, when no material was delivered |
| Douglass Roofing | $ 331,577.00 | Contractor claims materials are stored on site, but no documentation nor Bill of Sale |
| Douglass Roofing | $ 8,455.00 | Vertex estimates the roofing work at demobilization causes lien reduction |
| Drake Williams Steel | $ 646,200.00 | Overbilled for "misc" work - invalid lien claim with no back up documentation |
| E Light Electrical | $ 19,020.40 | Change Order documentation missing - was billed on final request for payment |
| E Light Electrical | $ 117,934.05 | Vertex estimates the % completed was overbilled in fixtures, branch light, and fire alarm |
| General Ceiling | $ 215,866.00 | Vertex estimates the claim is overstated for exterior sheathing, framework, and drywall/insul |
| Glover Masonry | $ 10,280.20 | Vertex estimates the claim is overstated for incomplete masonry installation on Bldg 2-B |
| Horizon Glass | $ 41,473.00 | General Conditions billed at 98% when only 30% material delivered, and 0% installed |
| Olson Plumbing | $ 42,501.00 | Change Order documentation missing - was billed on final request for payment |
| Olson Plumbing | $ 40,000.00 | Vertex estimates an overbilling for HVAC labor & material, when nothing has been installed |
| Parker Steel | $ 4,000.00 | Vertex estimates the remaining labor to install the welded wire mesh in Bldg 2-B |
| Rolling Plains | $ 7,060.00 | Deficient work installed by subcontractor is the responsibility of the subcontractor |
| Simplex Grinnell | $ 50,634.75 | Contractor claims materials are stored on site, but no documentation nor Bill of Sale |
| Simplex Grinnell | $ 7,767.00 | Change Order documentation missing - was billed on final request for payment |
| Thyssenkrupp Elevator | $ 23,015.00 | Cancellation fee incorrectly billed - is not part of contract agreement |
| GE Johnson | $ 350,527.00 | Overbilling for General Conditions, Site Requirements, and Contingency |
| GE Johnson | $ 296,886.55 | Final pay application overbilling for CM/GC fee |
| GE Johnson | $ 198,983.60 | GE Johnson overbilled SRKO for subcontractor's individual contracts |
| | $ 2,505,084.15 | |

**Exhibit H**