# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | Case No.  10-13186 SBB |
| THE SRKO FAMILY LIMITED ) | Chapter 11 |
| PARTNERSHIP ) | |
| EIN 20-0334422 ) | |

## SECOND MODIFICATION TO
## SECOND AMENDED PLAN OF REORGANIZATION PROPOSED BY INFORMAL MECHANICS LIENHOLDER COMMITTEE

(G.E. Johnson Construction Company, Inc., Stresscon Corp., Mech-One, Inc., Olson Plumbing and Heating Company, Rial Heating and Air Conditioning, Inc., E Light Electric Services, Inc., and Bible Electric, Inc.)

Dated:  October 15, 2014

Caroline C. Fuller, Esq.
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, CO  80202
(303) 830-2044
cfuller@fwlaw.com

*Counsel for the Informal Mechanics
Lienholder Committee*

The Informal Mechanics Lienholder Committee, (the "**Committee**") an informal committee of creditors holding mechanics' lien claims against property owned by The SRKO Family Limited Partnership ("**Debtor**") hereby modifies its of its Second Amended Plan of Reorganization dated August 28, 2014, as modified by the first Modification thereto filed with the Court on October 6, 2014 (the "Plan"), as follows:

1. Article I.A.83 of the Plan is hereby restated in its entirety as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

### A. Defined Terms

83. "**REORGANIZED SRKO**" means the Debtor, from and after the Effective Date, which will be converted to a Colorado corporation pursuant to the New Governance Documents and will be renamed New Crossings, Inc.

2. Article II(B)(1)(d) of the Plan is hereby restated in its entirety as follows:

## ARTICLE II

## DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND INTERESTS

### B. Allowance and Treatment of Unclassified Claims

#### 1. Administrative Claims

##### (d) Administrative Claims

An Entity holding or claiming an Administrative Claim must file a motion or Administrative Expense Request within thirty (30) days of the Effective Date.; *provided however,* that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case (i.e., obligations arising out of goods and services sold and delivered prior to the Effective Date) shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, without the need for filing an Administrative Expense Request.

After the Plan Effective Date, only the Committee or REORGANIZED SRKO may object to an Administrative Claim.  Unless the Committee or REORGANIZED SRKO objects to an Administrative Claim within twenty-one (21) days of filing, such Claim shall be allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Claim, subject to all defenses, rights of recoupment, offsets and other rights arising under any agreements between the Holder of such Administrative Claim and REORGANIZED SRKO, and/or applicable law.

  REORGANIZED SRKO shall pay or cause to be paid an Allowed Administrative Claim, in cash on the latest of (a) the Plan Effective Date or as soon as reasonably practicable after the date on which the Bankruptcy Court allows such Claim pursuant to a Final Order, (b) the date such Administrative Claim becomes payable pursuant to applicable statute or contract governing the terms of payment of such Administrative Claim; or (c) upon such other terms as may be mutually agreed between the Holder of such Administrative Claim and REORGANIZED SRKO.

  3. Article II(C)(1)(a) of the Plan is hereby restated in its entirety as follows:

## ARTICLE II

### DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND INTERESTS

**C.** **Allowance and Treatment of Classified Claims**

 **1. Class 1 (Secured Claims on Filing 1)**

  **(a)** **Class 1A (Secured Claims of the Priority Filing 1 Lienholders).**

  Unless the holder of an Allowed Claim in Class 1A agrees to different treatment of its Claim, the Allowed Claims in Class 1A will be paid in full, on or as soon as practicable after the Effective Date of the Plan, together with interest accrued on such Claim to the date of payment at the rate provided for in the Mechanics Lien Judgment.  As of the Plan Effective Date, The Liens of the Class 1A Claimants shall be deemed discharged, released and extinguished and shall no longer burden Filing 1 or Colorado Crossing.  Colorado Crossing will be vested in REORGANIZED SRKO free and clear of the Liens.

  4. Article V G of the Plan, entitled **Injunction Against Interference by Richardson Parties,** is hereby amended and restated in its entirety as follows:

## ARTICLE V

### EFFECT OF CONFIRMATION OF THE PLAN

**G.** **Injunction Against Interference by Jannie Richardson.**

  **JANNIE RICHARDSON IS PERMANENTLY ENJOINED FROM, DIRECTLY OR INDIRECTLY, HOLDING HERSELF OUT AS, OR PURPORTING TO ACT AS, AN AUTHORIZED AGENT OF REORGANIZED SRKO, AND FROM ENTERING ANY PROPERTY OWNED BY REORGANIZED SRKO WITHOUT THE PRIOR WRITTEN CONSENT OF AN AUTHORIZED AGENT OF REORGANIZED SRKO.**

     5.    Article VI.P. is hereby amended to add the following provision

## ARTICLE VI.

## OTHER PLAN PROVISIONS

P.    Retention of Jurisdiction

. . .

     13.    Hear any claims or causes of action asserted by the Plan Proponents or REORGANIZED SRKO against any Richardson Party arising after the Effective Date involving Colorado Crossing.

     6.    The Plan Supplement is hereby modified by substituting the Attachment to Articles of Incorporation of New Crossings, Inc., attached hereto as **Exhibit 1**, in lieu of the draft Attachment to Articles of Incorporation of New Crossings, Inc. filed as a part of the New Governance Documents filed as Attachment A to the Plan Supplement filed on August 28, 2014.

Dated: October 15, 2014

Respectfully Submitted,

**THE INFORMAL MECHANICS LIENHOLDER COMMITTEE**

**G.E. JOHNSON CONSTRUCTION COMPANY, INC.**

By: *Peter J. Speiser*
    Peter J. Speiser, Executive Director

**STRESSCON CORP.**

By: *James E. Sorensen*
    James E. Sorensen, President

# Exhibit 1

## Attachment to Articles of Incorporation of New Crossings, Inc.

ATTACHMENT TO

ARTICLES OF INCORPORATION
OF
NEW CROSSINGS, INC.

This Attachment (this "Attachment") to the Articles of Incorporation (the "Articles") is delivered to the Secretary of State of the State of Colorado in connection with the incorporation of New Crossings, Inc. (the "Corporation") under the Colorado Business Corporation Act, Colorado Revised Statutes Section 7-101-101, et seq., as amended (the "Act"). The terms and provisions contained in this Attachment are expressly incorporated in and made a part of the Articles, and any reference to the Corporation's Articles shall expressly include this Attachment.

ARTICLE ONE
NAME

The name of the corporation (which is hereinafter referred to as the "Corporation") is: New Crossings, Inc.

ARTICLE TWO
PURPOSES AND POWERS

The purposes for which the Corporation is formed is to proceed with the development of the property known as Colorado Crossing pursuant to the terms of the Plan, as defined below.

ARTICLE THREE
CAPITAL STOCK AND SHAREHOLDER RIGHTS

3.1   Authorized Shares.  The Corporation shall be authorized to issue One Hundred Sixty Million (160,000,000) shares of capital stock, of which seventy-five million (75,000,000) shares shall be Class A common stock without par value, seventy-five million (75,000,000) shares shall be Class B common stock without par value, and ten million (10,000,000) shares shall be preferred stock without par value to be designated the "Preferred Stock".

3.2   Description.   A description of each class of stock with its rights, voting powers, restrictions, limitations as to distributions, and qualifications is as follows:

3.2.1   Class A Common.  The Class A Common Stock and the Class B Common Stock shall have the same designations, preferences, limitations and rights, excluding voting rights, specifically including all redemption rights and rights to dividends and liquidation distributions, without regard to class or voting right.  All property and stock distributions, whether by dividend or liquidation, shall be distributed between the two classes of stock proportionate to the number of then outstanding shares of each Class.  The two classes of Common Stock shall differ only with respect to voting rights.  The holders of the Class A

Common Stock are entitled to one vote for each share of Class A Common Stock held at all meetings of shareholders (and written actions in lieu of meetings). The voting, dividend and liquidation rights of the Class A Common Stock are subject to and qualified by the rights, powers and preferences of the holders of the Preferred Stock set forth herein.

  3.2.2 <u>Class B Common</u>. The holders of Class B Common Stock shall have no voting rights, for any purposes, except as otherwise required by the Colorado Business Corporation Act, and the holders of Class A Common Stock and the Preferred Stock, to the exclusion of the holders of Class B Common Stock, shall have all voting rights as shareholders of the Corporation. The dividend and liquidation rights of the Class B Common Stock are subject to and qualified by the rights, powers and preferences of the holders of the Preferred Stock set forth herein.

  3.2.3 <u>Preferred Stock</u>.

   3.2.3.1 <u>Dividends</u>.

    (a) Subject to paragraph 3.2.3.5, holders of the Preferred Stock, in preference to the holders of the Corporation's Common Stock, Class A and Class B, shall be entitled to receive dividends which shall be cumulative and shall accrue on the Preferred Stock at the rate of twelve percent (12%) per annum (cumulative, but not compounded, until paid from the date of issuance of each share of Preferred Stock, whether or not declared) on the Preferred Stock Original Issue Price, as defined below (the "Preferred Cumulative Dividend"), out of funds legally available therefore. The Preferred Cumulative Dividend shall be payable only in cash. The Preferred Cumulative Dividend shall be payable if declared by the Board of Directors or, if earlier, upon the redemption of the Preferred Stock as provided in these Articles or the dissolution and liquidation of the Corporation.

    (b) Subject to paragraph 3.2.3.5, so long as any shares of Preferred Stock are outstanding, the Corporation shall not (i) declare, pay or set aside any dividends on shares of any other class of capital stock of the Corporation, or (ii) make any other distributions with respect to any other class of capital stock of the Corporation unless the Corporation shall at the same time pay to all the holders of Preferred Stock the entire Preferred Cumulative Dividend then unpaid and redeem all of the outstanding Preferred Stock as provided in paragraph 3.2.3.2 below.

    (c) The "Original Issue Price" means, in the case of the Preferred Stock, One Dollar ($1.00) (as adjusted for any stock dividends, combinations, splits, reorganizations and the like with respect to such shares after the filing date hereof).

   3.2.3.2 <u>Redemption of Preferred Stock</u>.

    (a) <u>In General</u>. Subject to paragraph 3.2.3.5, the Corporation has the right to redeem any or all of the Preferred Stock, at such times, in such amounts, and in such order (except as provided in subsections 1 and 2 below) as the Board of Directors determines, in its sole discretion, at a price equal to the Preferred Stock Original Issue Price per

share, plus the unpaid amount of the Preferred Cumulative Dividend (the "Redemption Price"). When the Corporation exercises its right to redeem the Preferred Stock issued by the Corporation it must redeem the Preferred Stock from the holders of such stock in the following order:

(1) First, with respect to any Preferred Stock issued pursuant to the Exit Interest Subscriptions, as defined in the Plan, as defined below; and

(2) Second, with respect to any Preferred Stock issued pursuant to the Exit Interest Purchase Agreement to United Contractors Capital, LLC, a Colorado limited liability company, or pursuant to the Star Mesa Contract, as defined in the Plan and the disclosure statement thereto.

(b) <u>Plan</u>. For purposes of these Articles the "Plan" means the Second Amended Plan of Reorganization Proposed By Informal Mechanics Lienholder Committee, as it may be amended from time to time, and as confirmed by the United States Bankruptcy Court for the District of Colorado in Case No. 10-13186-SBB.

(c) <u>Redemption Notice</u>. The Corporation shall send written notice of the redemption (the "Redemption Notice") to each holder of record of Preferred Stock to be redeemed by the Corporation not less than 40 days prior to the intended date of the redemption (each a "Redemption Date"). Each Redemption Notice shall state:

(1) the number of shares of Preferred Stock held by the holder that the Corporation shall redeem on the Redemption Date specified in the Redemption Notice;

(2) the Redemption Date and the Redemption Price; and

(3) that the holder is to surrender to the Corporation, in the manner and at the place designated, his, her or its certificate or certificates representing the shares of Preferred Stock to be redeemed.

(d) <u>Surrender of Certificates; Payment</u>. On or before the applicable Redemption Date, each holder of shares of Preferred Stock to be redeemed on such Redemption Date shall surrender the certificate or certificates representing such shares (or, if such registered holder alleges that such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Corporation to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, theft or destruction of such certificate) to the Corporation, in the manner and at the place designated in the Redemption Notice, and thereupon the Redemption Price for such shares shall be payable to the order of the person whose name appears on such certificate or certificates as the owner thereof. In the event fewer than all of the shares of Preferred Stock represented by a certificate are redeemed, a new certificate representing the unredeemed shares of Preferred Stock shall promptly be issued to such holder.

(e) <u>Rights Subsequent to Redemption</u>. If the Redemption Notice shall have been duly given, and if on the applicable Redemption Date the Redemption Price payable upon redemption of the shares of Preferred Stock to be redeemed on such Redemption Date is paid or tendered for payment or deposited with an independent payment agent so as to be available therefore in a timely manner, then notwithstanding that the certificates evidencing any of the shares of Preferred Stock so called for redemption shall not have been surrendered, dividends with respect to such shares of Preferred Stock shall cease to accrue after such Redemption Date and all rights with respect to such shares shall forthwith after the Redemption Date terminate, except only the right of the holders to receive the Redemption Price without interest upon surrender of their certificate or certificates therefore.

(f) <u>Redeemed or Otherwise Acquired Shares</u>. Any shares of Preferred Stock that are redeemed or otherwise acquired by the Corporation shall be automatically and immediately cancelled and retired and shall not be reissued, sold or transferred. The Corporation may not exercise any voting or other rights granted to the holders of Preferred Stock following redemption.

(g) <u>Waiver</u>. Any of the rights, powers, preferences and other terms of the Preferred Stock set forth herein may be waived on behalf of all holders of Preferred Stock by the affirmative written consent or vote of the holders of at least a majority of the shares of Preferred Stock then outstanding.

(h) <u>Notices</u>. Any notice required or permitted by the provisions of this Article Three to be given to a holder of shares of Preferred Stock shall be mailed, postage prepaid, to the post office address last shown on the records of the Corporation, or given by electronic communication in compliance with the provisions of the Colorado Business Corporation Act, and shall be deemed sent upon such mailing or electronic transmission.

3.2.3.3  <u>Liquidation, Dissolution or Winding Up</u>.

(a) <u>Preferential Payments to Holders of Preferred Stock</u>. Subject to paragraph 3.2.3.5, in the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, the holders of shares of Preferred Stock then outstanding shall be entitled to be paid out of the assets of the Corporation available for distribution to its shareholders before any payment shall be made to the holders of Common Stock by reason of their ownership thereof, an amount per share equal to the Preferred Stock Original Issue Price, plus any Preferred Cumulative Dividend accrued but unpaid thereon, whether or not declared, together with any other dividends declared but unpaid thereon. If upon any such liquidation, dissolution or winding up of the Corporation, the assets of the Corporation available for distribution to its shareholders shall be insufficient to pay the holders of shares of Preferred Stock the full amount to which they shall be entitled under this paragraph, the holders of shares of Preferred Stock shall share ratably in any distribution of the assets available for distribution in proportion to the respective amounts which would otherwise be payable in respect of the shares

held by them upon such distribution if all amounts payable on or with respect to such shares were paid in full.

(b)   Payments to Holders of Common Stock.  In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, after the payment of all preferential amounts required to be paid to the holders of shares of Preferred Stock, the remaining assets of the Corporation available for distribution to its shareholders shall be distributed among the holders of shares of Common Stock, pro rata based on the number of shares held by each such holder.

3.2.3.4   Voting.

(a)   General.  On any matter presented to the shareholders of the Corporation for their action or consideration at any meeting of shareholders of the Corporation (or by written consent of shareholders in lieu of meeting), each holder of outstanding shares of Preferred Stock shall be entitled to cast the number of votes equal to the number of whole shares of Preferred Stock held by such holder.  Except as provided by law or by the other provisions of the Articles, holders of Preferred Stock shall vote together with the holders of Class A Common Stock as a single class.

(b)   Election of Directors.  The size of the Board of Directors shall be as provided in Article Six of these Articles.  At each meeting for the election of directors, (i) so long as any Preferred Stock remains outstanding the holders of record of shares of Preferred Stock, exclusively and voting as a separate class, shall be entitled to elect three (3) directors of the Corporation (the "Preferred Directors"), and (ii) the holders of record of the shares of Class A Common Stock, exclusively and as a single class, shall be entitled to elect the remaining number of directors of the Corporation not elected pursuant to the immediately preceding clause (i).  Any Board action shall require the vote of a majority of the Board.  Any director elected as provided in the preceding sentence may be removed with or without cause by, and only by, the affirmative vote of the holders of the shares of the class or series of capital stock entitled to elect such director or directors, given either at a special meeting of such shareholders duly called for that purpose or pursuant to a written consent of shareholders.  If the holders of shares of Preferred Stock or Common Stock, as the case may be, fail to elect a sufficient number of directors to fill all directorships for which they are entitled to elect directors, voting exclusively and as a separate class, pursuant to the second sentence of this paragraph (b), then any directorship not so filled shall remain vacant until such time as the holders of the Preferred Stock or Common Stock, as the case may be, elect a person to fill such directorship by vote or written consent in lieu of a meeting; and no such directorship may be filled by shareholders of the Corporation other than by the shareholders of the Corporation that are entitled to elect a person to fill such directorship, voting exclusively and as a separate class.  At any meeting held for the purpose of electing a director, the presence in person or by proxy of the holders of a majority of the outstanding shares of the class or series entitled to elect such director shall constitute a quorum for the purpose of electing such director.  Except as otherwise provided in this paragraph (b), a vacancy in any directorship filled by the holders of any class or series shall be filled only by vote or written consent in lieu of a meeting of the holders of such class or series

-5-

or by any remaining director or directors elected by the holders of such class or series pursuant to this paragraph (b). Notwithstanding the foregoing provisions of this paragraph, upon the complete redemption of all the Preferred Stock as provided in paragraph 3.2.3.2, the Preferred Directors elected by the Preferred Shareholders shall be deemed to have immediately resigned, thus creating a vacancy on the board of directors to be filled as provided in the Bylaws.

(c) <u>Preferred Stock Protective Provisions</u>. At any time when shares of Preferred Stock are outstanding, the Corporation shall not, either directly or indirectly by amendment, merger, consolidation or otherwise, do any of the following without (in addition to any other vote required by law or the Articles of Incorporation) the written consent or affirmative vote of the holders of at least a majority of the then outstanding shares of Preferred Stock, given in writing or by vote at a meeting, consenting or voting (as the case may be) separately as a class, and any such act or transaction entered into without such consent or vote shall be null and void ab initio, and of no force or effect:

(1) liquidate, dissolve or wind-up the business and affairs of the Corporation, effect any merger or consolidation, or consent to any of the foregoing;

(2) amend, alter or repeal any provision of the Articles of Incorporation or Bylaws of the Corporation in a manner that adversely affects the powers, preferences or rights of the Preferred Stock;

(3) create, or authorize the creation of, or issue or obligate itself to issue shares of, any additional class or series of capital stock unless the same ranks junior to the Preferred Stock with respect to the distribution of assets on the liquidation, dissolution or winding up of the Corporation, the payment of dividends and rights of redemption, or increase the authorized number of shares of Preferred Stock or increase the authorized number of shares of any additional class or series of capital stock unless the same ranks junior to the Preferred Stock with respect to the distribution of assets on the liquidation, dissolution or winding up of the Corporation, the payment of dividends and rights of redemption;

(4) create, or hold capital stock in, any subsidiary that is not wholly owned (either directly or through one or more other subsidiaries) by the Corporation, or sell, transfer or otherwise dispose of any capital stock of any direct or indirect subsidiary of the Corporation, or permit any direct or indirect subsidiary to sell, lease, transfer, exclusively license or otherwise dispose (in a single transaction or series of related transactions) of all or substantially all of the assets of such subsidiary; or

(5) increase or decrease the authorized number of directors constituting the Board of Directors.

3.2.3.5 <u>Limitation on Distributions on Preferred Stock</u>. No distributions of any type, including, but not limited to, dividends, payments in redemption of Preferred Stock or liquidating distributions shall be made until such time as the Administrative and Priority Claims, the Exit Loan, the Vacant Lienholders, any Assumed Liabilities, and after payment of

the net proceeds from the sale of Filing 1 to the Priority and Non-Priority Filing 1 Lienholders, all as defined in the Plan, have been paid in full.

3.4     Preemptive Rights.  Shareholders of this Corporation shall have no preemptive rights to acquire unissued shares.

3.5     Cumulative Voting.  Cumulative voting shall not be permitted in the election of directors or otherwise.

## ARTICLE FOUR
## REGISTERED OFFICE AND AGENT

The street address of the registered office of the Corporation is 25 North Cascade Avenue, #400, Colorado Springs, CO  80903.  The name of the registered agent of the Corporation at such office is Peter Speiser.

## ARTICLE FIVE
## PRINCIPAL OFFICE

The address of the principal office of the Corporation is 25 North Cascade Avenue, #400, Colorado Springs, CO  80903.

## ARTICLE SIX
## DIRECTORS

There shall be five (5) initial directors.  Thereafter, the number of directors shall be fixed from time to time in accordance with the Bylaws of the Corporation.

## ARTICLE SEVEN
## LIMITATION OF LIABILITY

7.1     Limitation of Liability.  No director of this Corporation shall have any personal liability for monetary damages to the Corporation or its shareholders for breach of fiduciary duty as a director, except that this Article Seven shall not eliminate or limit the personal liability of a director to the Corporation or its shareholders for monetary damages for (i) any breach of the director's duty of loyalty to the Corporation or to its shareholders; (ii) acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) voting for or assenting to a distribution made in violation of Section 7-106-401 of the Act or these Articles of Incorporation, as they may be amended from time to time, if it is established that the director did not perform the director's duties in compliance with Section 7-108-401 of the Act (provided that the personal liability of a director in this circumstance shall be limited to the amount of the distribution which exceeds what could have been distributed without violation of Section 7-106-401 of the Act or these Articles of Incorporation, as they may be amended from time to time); or (iv) any transaction from which the director directly or indirectly derived an improper personal benefit.  Nothing contained herein will be construed to deprive any director of his or her right to

all defenses ordinarily available to a director nor will anything herein be construed to deprive any director of any right he or she may have for contribution from any other director or person.

7.2 **Effect of Amendments or Modifications**. If the Act is hereafter amended to eliminate or limit further the liability of a director, then, in addition to the elimination and limitation of liability provided above, the liability of each director shall be eliminated or limited to the fullest extent permitted by the Act as so amended. No repeal or modification of this Article Seven shall adversely affect any right or protection of a director of the Corporation under this Article Seven, existing at the time of such repeal or modification, with respect to any liability occurring prior to such repeal or modification.

## ARTICLE EIGHT
## INDEMNIFICATION

8.1 **Directors and Officers**. The Corporation shall indemnify its directors and officers to the fullest extent permitted by the Act, as now or hereafter in effect, and in the Bylaws. Such right to indemnification will continue as to any person who has ceased to be a director or officer of the Corporation and such indemnification rights shall inure to the benefit of such director's or officer's heirs, executors and legal representatives. The rights to indemnification and to the advancement of defense expenses conferred under this Article Eight and in the Bylaws will be in addition to any and all other rights that the indemnities may hold or hereafter acquire from any source and in any manner whatsoever, including, without limitation, rights arising under the Act, any other applicable law, the Bylaws, by contract or agreement, or by virtue of any vote of the shareholders or of the disinterested directors of the Corporation. No repeal or modification of this Article Eight will adversely affect any rights to indemnification or the advancement of expenses of a director or officer of the Corporation existing at the time of such repeal or modification with respect to any act or omission occurring prior to such repeal or modification.

8.2 **Insurance**. The Corporation, upon approval by the Board of Directors, may purchase insurance on behalf of any person required or permitted to be indemnified pursuant to this Article.

## ARTICLE NINE
## ACTION BY CONSENT

Any action required or permitted by the Colorado Business Corporation Act to be taken at a shareholders' meeting may be taken without a meeting if shareholders holding shares having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all of the shares entitled to vote thereon were present and voted consent to such action in writing.

## ARTICLE TEN
## RIGHT OF FIRST REFUSAL

10.1  In General.  If a shareholder (the "Transferor") desires to accept an offer to sell that shareholder's shares in the Corporation to any party other than a Creditor Affiliate, as defined in the Plan (a "Third Party") and a bona fide offer is received by the Transferor (the "Offer"), the Transferor shall submit written notice of the Third Party offer to the Board of Directors and to all shareholders, which written notice shall include a copy of the offer and shall state (a) the number of shares to be sold; (b) the price and terms; (c) the name and address of the Third Party; and (d) the date of closing (the "Transfer Notice").  For a period of thirty (30) days after receipt of the Transfer Notice, Corporation shall have the right to purchase all of the shares offered at the price and on the terms in the Offer.  If the Corporation declines to purchase all of the shares offered, the Board of Directors shall promptly give written notice to the shareholders of such fact.  For thirty (30) days following receipt of such notice from the Board of Directors (the "Second Right of First Refusal Period"), the shareholders shall have the right to purchase any of the offered shares which were not purchased by Corporation at the price and on the terms in the Offer.  Notice of an acceptance shall be sufficiently given if, before midnight on the last day of the notice period, it is delivered in person to the Transferor or mailed, postage prepaid, to the address of the Transferor as stated in the notice.  If more than one of the remaining shareholders wish to purchase, then the offered shares shall be sold and purchased pro rata based upon the total percentage of shares owned by a purchasing shareholder to the total percentage of shares owned by all remaining shareholders desiring to purchase, or as otherwise mutually agreed.  If the Corporation and the shareholders do not elect to acquire all the shares offered, then the Transferor may proceed to sell the shares to the Third Party purchaser, but only to the persons or entities and in the manner, at the time, and upon the identical terms and conditions set forth in the Transfer Notice.  The closing of any sale of shares under this Article shall be as provided in the Transfer Notice, except that the date of the closing shall be the later of the date in the Transfer Notice or thirty (30) days following the date of the last acceptance that resulted in all of the Transferor's shares being purchased by the Corporation and shareholders under this paragraph.

10.2.  Conversion to Class B Common Stock.  Any shares of Class A Common Stock transferred to a Third Party shall automatically be converted into an equal number of shares of Class B Common Stock, if such Third Party was not, as of February 19, 2010, the holder of a Claim, or an Affiliate of such holder, that is an Allowed Claim in the Bankruptcy Case, all as further defined in the Plan.  For purposes of this section, the term "transfer" shall mean any direct or indirect transfer of shares, or an interest in shares, as defined in 11 U.S.C. Sec. 101(54), including, but not limited to a transfer by operation of law, a transfer by way of creation or foreclosure of a lien on such shares, and a transfer, vesting, or revesting of shares as a result of a bankruptcy filing by, or pursuant to the terms of any confirmed plan of reorganization proposed in a bankruptcy case involving, a holder of such shares.  Each shareholder hereby irrevocably appoints the secretary of the Corporation as his, her or its attorney-in-fact to cancel any shares of Class A Common Stock to be sold pursuant to this Article and issue an equal number of shares of Class B Common Stock to the Third Party in accordance with the provisions of this Paragraph 10.2, but the failure to physically cancel such Class A Common Stock and issue the Class B

Common Stock shall not prevent the conversion from being legally effective. This power, coupled with an interest, shall not expire on the death or incapacity of the appointing Shareholder, and may not be revoked while this Agreement is in effect.

10.3 <u>Implementation</u>. The Board of Directors may adopt additional rules and procedures determined by the Board of Directors to be reasonably necessary to carry out the intent of this Article.

10.4 <u>Effect of Violation</u>. Any transfer of the Corporation's stock in violation of this Article shall be null and void ab initio and not binding on the Corporation unless waived in writing by the Board of Directors.

10.5 <u>Share Legend</u>. Each certificate representing shares of stock of the Corporation now or hereafter issued by the Corporation, shall be imprinted with a legend in substantially the following form:

> "The transfer of the shares represented by the within certificate are subject to the provisions of the Articles of Incorporation as filed with the Colorado Secretary of State which include a right of first refusal as provided in Article Ten."

10.6 <u>Permitted Transfers</u>. Notwithstanding the restrictions on transfer of the Corporation's stock set forth in this Article, any shareholder may transfer shares of Preferred Stock or shares of Class A Common Stock to a Creditor Affiliate, as such term is defined in the Plan, without complying with the provisions of Article 10.1.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

End of Attachment